**In re Edwin MEESE III.**

**Division No. 87–1.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the purpose of Appointing Independent Counsel, Ethics in Government Act of 1978, as Amended).

July 12, 1990.

---

Before MacKINNON, Presiding, BUTZNER and PELL, Senior Circuit Judges.

PER CURIAM:

On May 11, 1987 the Acting Attorney General, by letter, referred the matter of Attorney General Edwin Meese III and his association with several individuals involved in "Welbilt Electronic Die Corporation," also known as Wedtech Corporation, to Independent Counsel James C. McKay, Esquire for investigation (hereafter "the referral"). The referral followed immediately upon a letter request by Meese dated the same date as the referral. At the time of the referral Mr. McKay was conducting an investigation into Franklyn C. Nofziger's representation of Wedtech Corporation

and Comet Rice, Inc.[1] Giving rise to the referral for investigation of Mr. Meese were the circumstances of his official and "personal and/or financial relationships with ... [Wedtech Corporation, Franklyn C. Nofziger,] E. Robert Wallach, and W. Franklyn Chinn ..."[2] during the time that Meese had been serving as Counselor to the President. The referral did not request a focused investigation into any specific criminal offense but rather requested a generalized *investigation* into possible violations of all eleven of the federal conflict of interest laws, i.e., 18 U.S.C. §§ 201–211.

At the outset the independent counsel investigation centered on whether Meese as Counselor to the President violated the conflict of interest laws in assisting the minority-owned Wedtech Corporation in its efforts to obtain a government defense contract. Independent Counsel later requested the Special Division to define his *prosecutorial jurisdiction* with respect to Meese, and the court complied.[3] The resulting investigation inquired into the Wedtech matter and then expanded extensively into six non-Wedtech matters.[4] It became very intensive and eventually continued for fourteen months. Upon the completion of the investigation, "no indictment [was] brought" against Mr. Meese. Now, as authorized by § 593(f)(1) of the Independent

Counsel Reauthorization Act of 1987,[5] Meese applies to the court for an award of $575,598.01 in attorneys' fees and costs incurred as a result of the investigation to which he was subjected. The court approves an award of $460,509.07.

### I.

Independent Counsel McKay began his investigation of Meese on May 11, 1987 under the terms of the Ethics in Government Act Amendments of 1982 as approved January 3, 1983 (96 Stat. 2039) (hereafter "the 1982 Act"). The 1982 Act was followed by the enactment on December 15, 1987 of the Independent Counsel Reauthorization Act of 1987 (hereafter "the 1987 Act" and "the Act") (101 Stat. 1293). It is the terms of Section 593(f)(1) of the 1987 Act that determine whether "reasonable" attorneys' fees are to be awarded in this case:[6]

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those *reasonable* attorneys' fees incurred by that individual during that investigation

1. The Special Division of the court had previously appointed Independent Counsel McKay to investigate whether Nofziger violated conflict of interest laws in connection with, *inter alia,* his lobbying activities on behalf of Wedtech Corporation and Comet Rice, Inc. *See* Order, In re Nofziger, Div. No. 87–1, at 2 (Feb. 2, 1987).

2. Referral letter of Acting Attorney General to Independent Counsel McKay of May 11, 1987; *see also* text *infra* pp. 1199–1200.

3. *See* text at pp. 1200–1201, *infra.*

4. While the investigation of Meese as initially referred to Independent Counsel McKay was based on the Nofziger/Wedtech inquiry, the investigation that resulted was greatly expanded:
   Part I—The Involvement of Edwin Meese III with Government Matters of Concern to the Welbilt/Wedtech Corporation
   Part II—Financial Relationships Between Mr. Meese and Mr. Chinn Relating to Meese Partners

Part III—Mr. Meese's Holdings in and Participation in Matters Relating to AT & T and the Regional Bell Operating Companies
Part IV—Mr. and Mrs. Meese's Tax Reporting and Payments for 1985
Part V—Relationship Between and Among the Meeses, E. Robert Wallach and Howard M. Bender
Part VI—Mr. Meese's Financial Disclosures; Financial Analyses; and Benefits Given and Received by Mr. Meese and Mr. Wallach
Part VII—AQABA Pipeline Project
Final Report of Independent Counsel, In Re Edwin Meese III, at xii–xv (July 5, 1988).

5. 28 U.S.C. § 591 *et seq.* (1988).

6. The provisions of the 1987 Act regarding attorneys' fees apply retroactively to independent counsel proceedings pending on December 15, 1987. Independent Counsel Reauthorization Act of 1987, Pub.L. No. 100–191 § 6(b)(2)(A), 101 Stat. 1307 (1987). The 1987 Act added the "reasonable" requirement.

which would not have been incurred *but for* the requirements of this chapter. 28 U.S.C. § 593(f)(1) (emphasis added).

■ We have recently outlined the standards for awarding attorneys' fees in independent counsel investigations. These standards require proof that the fees are "reasonable," adequately documented, and would not have been incurred "but for" the Act. *See In re Donovan*, 877 F.2d 982, 994 (D.C.Cir.1989); *In re Olson*, 884 F.2d 1415, 1428 (D.C.Cir.1989); *In re Sealed Case*, 890 F.2d 451 (D.C.Cir.1989); *In re Olson/Perry*, 892 F.2d 1073 (D.C.Cir.1990). Satisfying the "but for" requirement is the most difficult. The right to recover attorneys' fees in such cases against the Government is based on a waiver of the sovereign immunity of the United States and that standard must be strictly construed against the application and in favor of the sovereign. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *In re Donovan, supra*, at 994; *In re Olson, supra*, at 1428; *In re Jordan*, 745 F.2d 1574, 1576 (D.C.Cir.1984).

### A. The "But For" Requirement

The Ethics in Government Act of 1978 [7] was amended by the 1982 Act to provide that subjects of independent counsel investigations, who are not indicted, may be reimbursed for all or part of their attorneys' fees that "would not have been incurred in the absence of the special prosecutor [now independent counsel] law." S.Rep. No. 496, 97th Cong., 2d Sess. 18 (1982), U.S.Code Cong. & Admin.News 1982, pp. 3537, 3554; 28 U.S.C. § 593(g) (1982). This provision for reimbursement was included because:

> Congress learned that certain government officials ... had been subjected to investigations by independent counsels

that the Department of Justice would not have conducted had these officials been private citizens.... Thus, *these officials were subjected to a harsher standard than ordinary citizens* and incurred legal expenses no ordinary citizen would have incurred, *but for* the independent counsel statute. In such cases, reasonable attorney fees should be awarded.

H.R.Conf.Rep. No. 452, 100th Cong., 1st Sess. 31 (1987), U.S.Code Cong. & Admin. News 1987, pp. 2150, 2197 (emphasis added).

In addition to adding the provision for the reimbursement of attorneys' fees, Congress in the same Act raised the standards required for applications by the Attorney General to the Special Division for the appointment of independent counsels.

Prior to the 1982 Act, following a preliminary investigation, the Attorney General was required to request the appointment of an independent counsel unless the allegations were "so unsubstantiated that no further investigation or prosecution is warranted." 28 U.S.C. § 592(b)(1) (Supp. II 1978). The amendments brought by the 1982 Act, however, raised that standard to provide:

> If the Attorney General, upon completion of the preliminary investigation, *finds reasonable grounds to believe that further investigation or prosecution is warranted*, ... then the Attorney General shall apply to the division of the court for the appointment of a [sic] independent counsel....

28 U.S.C. § 592(c)(1) (1982) (emphasis added).[8] Requiring a finding of reasonable grounds substantially changed the nature and amount of evidence required to support a request for the appointment of an independent counsel.

In adding such change, Congress further directed the Attorney General to exercise

---

**7.** The present Independent Counsel Act has gone through two amendatory enactments: (1) Ethics in Government Act of 1978, Pub.L. No. 95–521, 92 Stat. 1867 (1978), amended by (2) Ethics in Government Act Amendments of 1982, Pub.L. No. 97–409, 96 Stat. 2039 (approved Jan. 3, 1983); and (3) then amended by the Indepen-

dent Counsel Reauthorization Act of 1987 (effective Dec. 15, 1987), 101 Stat. 1293.

**8.** This standard was further amended in 1987 to eliminate "or prosecution." *See* 28 U.S.C. § 592(c)(1)(A) and 28 U.S.C. § 593(c)(2)(B) and (C) (1988) (101 Stat. 1293, 1296, 1299).

the "reasonable discretion [that] is regularly practiced by the Department of Justice, U.S. Attorneys, and prosecutors throughout the federal system," and to "comply with the written or other established policies of the Department of Justice with respect to the enforcement of criminal laws." S.Rep. No. 496, *supra*, at 14, 15, U.S.Code Cong. & Admin.News 1982, pp. 3550, 3551; *see also* 28 U.S.C. § 592(c)(1) (1982).

This brought into play the policies of the Department of Justice, insofar as they relate to "further investigation[s]," including the following:

> 1. If the attorney for the government has *probable cause* to believe that a person has committed a federal offense within his jurisdiction, he should consider whether to:
>> (a) request or conduct further investigation; ...

DEPARTMENT OF JUSTICE, PRINCIPLES OF FEDERAL PROSECUTION, p. 5 (1980) (emphasis added).

Joining the "reasonable grounds" standard of the 1982 Act, with the Departmental policy of "probable cause" as the standard that must be satisfied before considering whether to "request or conduct [a] further [criminal] investigation," according to the latest interpretation of probable cause by the Supreme Court, requires a determination that "reasonable grounds" exist to believe that there is a "fair probability ... or substantial chance of *criminal activity....*" *Illinois v. Gates*, 462 U.S. 213, 238, 244 n. 13, 103 S.Ct. 2317, 2332, 2335 n. 13, 76 L.Ed.2d 527 (1983) (emphasis added). The "reasonable grounds" need not be as strong as the showing required to support an arrest or search, but traditionally cannot be based on mere association, casual rumor, speculation or mere suspicion. It appears to the court that, taking all the applicable requirements into consideration, before an independent counsel investigation could be initiated, Congress was requiring a showing that there was a fair probability or substantial chance that the subject engaged in *some* criminal activity.

The Meese fee application in substance contends that the "but for" requirement is satisfied because the referral of his investigation to the Independent Counsel, in asserted compliance with 28 U.S.C. § 592(e) and § 594(e) (1982), did not fully comply with the statutory standards that Congress had prescribed. The authorization of the investigation did not follow the normal procedure; it did not originally begin following an application to, and order by the Special Division of the court. And there is nothing in the court record to indicate that the normal preliminary investigation had been completed from which it was concluded that there were "reasonable grounds to believe that further investigation or prosecution is warranted." 28 U.S.C. § 592(c)(1) (1982).

■ Rather, the addition of Edwin Meese III as a new targeted subject of an existing independent counsel investigation began as a result of a *referral* by letter to Independent Counsel McKay who was already investigating Nofziger's role in Wedtech. That *investigative* jurisdiction over an additional targeted *individual subject* was being requested and obtained *by referral,* however, did not eliminate the necessity for compliance with the requirement of § 592(c)(1) that there be a preliminary investigation and finding of reasonable grounds to believe that further investigation or prosecution of the targeted official, as a subject of the investigation, was warranted. Otherwise, once an independent counsel was appointed to investigate one official, additional officials could be targeted as subjects by a mere letter of referral without a finding of the basic "reasonable grounds" protections the statute affords. As we interpret the statute, there must be a determination by the Attorney General that the "reasonable grounds" requirement is satisfied before a valid investigation of an added official can be referred to an existing independent counsel.

1. The Referral

■ As indicated above, the independent counsel investigation of Mr. Meese began when the Attorney General (Acting), following the receipt on May 11, 1987 of a letter from Meese's counsel requesting

such investigation, immediately, by letter, *referred* the Meese matter to Independent Counsel McKay who had previously been appointed with investigative and prosecutorial jurisdiction over Franklyn C. Nofziger and his lobbying relationship to Welbilt Electronic Die Corporation (Wedtech) and Comet Rice, Inc.[9]  Under the 1982 Act, given the proper findings, referral could be a proper procedure;[10] it was granted the same day as the Meese request and without any finding in the record of "reasonable grounds."

The letter of referral was limited to a request to Independent Counsel to investigate Meese's conduct involving *Wedtech* and his association with individuals involved in Wedtech:

> I hereby request that you accept referral of the question whether the federal conflict of interest law, 18 U.S.Code §§ 201–211, or any other provision of federal criminal law, was violated by Mr. Meese's relationship or dealings at any time from 1981 to the present with any of the following: Welbilt Electronic Die Corporation/Wedtech Corporation (including any of its contracts with the U.S. Government or efforts to obtain same); Franklyn C. Nofziger; E. Robert Wallach; W. Franklyn Chinn; and/or Financial Management International, Inc.

Referral letter of May 11, 1987 of Attorney General (Acting) to Independent Counsel McKay at 3.

### 2. Grounds Urged Upon Independent Counsel to Accept Referral

At this point we note two significant extracts from the letter of referral of May 11, 1987 urging Independent Counsel to accept the referral, and upon which the Independent Counsel immediately accepted the Meese matter for investigation:

9. *See* Order, In re Nofziger, Div. No. 87–1, at 2 (Feb. 2, 1987).

10. § 592(e) The Attorney General may ask a [sic] independent counsel to accept referral of a matter that relates to a matter within that independent counsel's prosecutorial jurisdiction.

In fairness to Mr. Meese, I should state that the reports we have received concerning Mr. Meese's relationships with Wedtech-associated individuals and entities are only *fragmentary*, and *do not show that Mr. Meese ever received any compensation from Welbilt/Wedtech, nor that he ever invested in the securities of Welbilt/Wedtech.* While I believe the Public Integrity Section is in possession of all relevant information developed to date by the U.S. Attorneys' offices in New York and Baltimore and by your office, *it may well be that further investigation will be able to resolve definitively the questions raised* by Mr. Meese's relationship to the Welbilt/Wedtech contract and to associates of the Welbilt/Wedtech Company.

> \*     \*     \*     \*     \*     \*

Finally, while as indicated above the information concerning Mr. Meese himself is *fragmentary* and *preliminary*, the present situation is somewhat *unusual* in that the various investigations have developed substantial evidence of Wedtech-related criminal conduct on the part of individuals *other than Mr. Meese.*

Letter of May 11, 1987, pp. 2, 3 (emphasis added).

The above extracts from the letter of referral, the remainder of the letter, and Independent Counsel's notification to the Special Division, indicate that referral of the investigative cause and the acceptance by Independent Counsel was made on the basis of *"fragmentary"* and *"preliminary"* information that lacked "specificity" from the beginning. *See* 28 U.S.C. § 592(a)(1) (1982). This information, despite the substantial amount of evidence that had been accumulated from official investigations by two grand juries in New York and Baltimore, the independent counsel investigation of *Nofziger/Wedtech*, the

§ 594(e) ... [A] [sic] independent counsel may accept referral of a matter by the Attorney General, if the matter relates to a matter within such independent counsel's prosecutorial jurisdiction as established by the division of the court.  If such a referral is accepted, the independent counsel shall notify the division of the court.

investigation by the Public Integrity Section of the Department of Justice, and undoubtedly some FBI investigation, included:

> *[no] show[ing] that Mr. Meese ever received any compensation from Welbilt/Wedtech, [or Wedtech associated individuals,]* nor that he ever invested in the securities of Welbilt/Wedtech.... [And the letter stated] the present situation [was considered to be] somewhat *unusual* in that the various investigations have developed substantial evidence of Wedtech-related criminal conduct on the part of individuals *other than Mr. Meese.*

Referral Letter of May 11, 1987, *supra,* pp. 1195 (emphasis added). It rather appears that it is the *characterization* of the failures of numerous official investigations to discover any evidence of "criminal conduct" by Mr. Meese as "unusual" that is "unusual." [11]

Nevertheless, despite the deficiency of inculpatory information, Independent Counsel was urged to accept the referral: (1) because the Independent Counsel was already investigating certain Wedtech related matters; (2) because the Department did not wish to "interfere with or otherwise burden" the Nofziger investigation; (3) because the Department of Justice considered that *"public confidence* in the administration of justice [would] be better served if these matters are resolved by an investigation conducted independently of the Department of Justice, which is headed by Mr. Meese;" (4) because the Department considered "that the most appropriate course [was] for ... [Independent Counsel McKay] to accept referral of this matter...." (5) because of Meese's prior *association* and relationship with two individuals being investigated in the Wedtech phase of the matter; (6) because two grand juries were conducting on-going related investigations of some of Meese's *associates;* (7) because conducting an independent investigation and thereby foregoing a duplicative investigation would serve the inter-

ests of the public and the convenience of the Department of Justice; and (8) because of the hope that additional investigation would definitively resolve unspecified circumstantial questions raised by Meese's relationship to Nofziger and his personal and business association with two individuals whose Wedtech related activities were being investigated. *Id.*

The Department of Justice also contends that the investigation was properly referred to Independent Counsel because:

> Mr. Meese *specifically requested* that the matter be referred to Independent Counsel McKay pursuant to § 592(e).

Department of Justice Evaluation Memorandum of Meese's Request for Attorneys' Fees at 7 (April 20, 1988) (emphasis added). However, Congress in its legislative history states definitively:

> [T]he desires of the possible subject of the investigation are *irrelevant* to the decisionmaking process [as to whether an independent counsel should be requested].

S.Rep. No. 123, 100th Cong., 1st Sess. 21 (1987), U.S.Code Cong. & Admin.News 1987, p. 2170 (emphasis added); *see* text at p. 1201, *infra.*

The reasons referred to above are insufficient to constitute the "reasonable grounds" the statute requires to justify the application for further investigation by an independent counsel, and there is no finding in the letter of referral, or in the court's record of this case, that such standard was satisfied. "Specificity of information" is an initial requirement for the preliminary investigation, 28 U.S.C. § 592(a)(1), and there is no justification for dropping that requirement from the "reasonable grounds" standard. If stronger cause existed it was not stated.

In addition, when the Department contends that the Meese request for appointment of independent counsel should be relied upon as one factor justifying the referral, it appears *that too much reliance may have been placed on the Meese request. See* text, *infra,* at p. 1201. Such reliance

---

**11.** It thus comes as no surprise that the extensive investigation by Independent Counsel exonerated Mr. Meese on all Wedtech related allegations.

as a normal reaction is understandable, but irrelevant. Also, particularly objectionable is the reliance on Meese's *association* with some individuals who were being investigated. When suspicion is bred from association it is a doubly deficient ground.

Taken by its four corners, the letter of referral seems to admit that, although there have been several official investigations into Wedtech, actual *criminal* conduct by Meese is *not* being suggested, but that Independent Counsel should accept the broad referral and investigate Meese as a subject because of a concatenation of irrelevant facts and circumstances that at best add up to relying on: generalized suspicion based on associations of a personal and personal business nature, Meese's request for the investigation, the "unusual" nature of the investigative situation, that reasonable grounds had already been found for investigating Nofziger and they did not want to interfere with that investigation, and that the public interest and the convenience of the Department of Justice would be served by McKay's acceptance of the referral.

The court agrees with the Department that the public interest and "public confidence in the administration of justice [was] better served" by the referral of the matter to the Independent Counsel, but this and the several other ordinarily commendable reasons referred to above, that normally might justify a non-criminal administrative investigation, do not constitute the "reasonable grounds" that the Congress required before a high ranking government official could be subjected to an extraordinary criminal investigation by an independent counsel. To do so, as was the case here, violated the intent that Congress expressed in enacting the "reasonable grounds" (probable cause) standard to better protect those covered officials from the severe intrusion of an extensive criminal investigation by an independent counsel. S.Rep. No.

12. Order, In re Nofziger, Div. No. 87–1 (May 11, 1987).

13. 28 U.S.C. § 593(c) provides that the Special Division, upon application of the Attorney Gen-

496, *supra*, at 19; *see also* 28 U.S.C. § 592(c)(1) (1982).

3. The Acceptance of the Referral and the Resulting Investigation

■ Independent Counsel McKay immediately accepted the referral and in accordance with § 594(e) did "notify" the Special Division on May 11, 1987 as follows:

> Independent Counsel has accepted the referral as a matter related to the jurisdiction mandated by the February 2, 1987 Order of the Special Division of the United States Court of Appeals for the District of Columbia Circuit, In re Franklyn C. Nofziger.

Notice by Independent Counsel of Acceptance of Referral, *In re Nofziger*, Div. No. 87–1 (May 11, 1987). Upon receipt of McKay's notice, the Special Division immediately granted Independent Counsel leave to disclose his Acceptance of the Referral.[12] Thus, an extensive independent counsel *investigation* of Meese/Wedtech was publicly launched on the basis of the letter of referral to an existing Independent Counsel.

It was not until three months later on August 6, 1987 that Independent Counsel McKay applied to the Special Division to define his necessary additional *prosecutorial jurisdiction*. Application to Define the Jurisdiction of the Independent Counsel, *In re Nofziger/Meese*, Div. No. 87–1 (Aug. 6, 1987). That complete authority to investigate and prosecute Meese was not acquired by virtue of the referral of the matter for investigation to Independent Counsel McKay was recognized in his delayed application to the Special Division for prosecutorial jurisdiction, which, after describing the referral, stated:

> It does not appear [under the Act], however, that the Acting Attorney General has the power to define the *prosecutorial jurisdiction* of an independent counsel, See 28 U.S.C. § 593(c).[13] That pow-

eral, may expand the *prosecutorial* jurisdiction of an existing independent counsel:

> The division of the court, upon the request of the Attorney General ... may expand the prosecutorial jurisdiction of an existing independent counsel, and such expansion may be

er is vested only in this court, which has not formalized a definition of Independent Counsel McKay's prosecutorial jurisdiction in the Meese matter.

Application to Define Jurisdiction of Independent Counsel, *In re Nofziger/Meese*, Div. No. 87–1 (Aug. 6, 1987). In response to the application by the Independent Counsel, the Special Division issued an order expanding his prosecutorial jurisdiction to include Mr. Meese as a subject of investigation.[14]

The investigation continued for 14 months and was broadened far beyond any investigation contemplated by the initial referral.[15] Following completion of the Wedtech investigation six additional matters were thoroughly investigated.[16] The Final Report of Independent Counsel covered 814 pages. It thus clearly appears that the basis upon which the referral was made and the extreme expansion of the resulting investigation subjected Meese to a "more rigorous application of the criminal law than is applied to other citizens." S.Rep. No. 496, *supra*, at 19, U.S.Code Cong. & Admin.News 1982, p. 3555, and *see supra* n. 4.

For all of the above reasons, the court finds that the reasonable attorneys' fees Meese subsequently incurred in his defense, to the extent we find their payment to be authorized, "would not have been incurred but for the requirements of [the Independent Counsel] chapter." 28 U.S.C. § 593(f)(1) (1988).

**B.  *The Meese Request for an Independent Counsel Investigation***

■ As previously stated, on May 11, 1987 Meese formally requested the Acting Attorney General to refer the matter of his alleged involvement in Welbilt/Wedtech to Independent Counsel McKay.

The fact that Meese initially requested appointment of an independent counsel has no bearing on Meese's right to be awarded his reasonable attorneys' fees. The legislative history of the Act clearly states that such request is "irrelevant" to the court's decision to award attorneys' fees incurred by the subject in the resulting investigation:

It has sometimes been suggested that, when considering whether to award attorney fees under the statute, the special court should take into consideration whether the subject of the investigation requested an independent counsel. *This factor should not play any role in the decision to award attorney fees.* The statute specifies that the Attorney General must request an independent counsel whenever there are reasonable grounds to believe further investigation is warranted in a case; *the desires of the possible subject of the investigation are irrelevant* to the decisionmaking process.

S.Rep. No. 123, 100th Cong., 1st Sess. 21 (1987), U.S.Code Cong. & Admin.News 1987, p. 2170 (emphasis added).

**C.  *Compliance with the Reasonable Fee Requirement***

Having found that Meese satisfies the "but for" requirement, it must next be determined whether the attorneys charged a reasonable hourly rate, whether the time expended by the attorneys on the case was reasonable, and whether the foregoing requirements are adequately documented. *In re Donovan*, 877 F.2d at 990, 994; *In re Olson*, 884 F.2d at 1422, 1428.

**1.  Hourly Rates**

■ The Conference Committee Report accompanying the Act provides the follow-

---

in lieu of the appointment of additional independent counsel.
28 U.S.C. § 593(c) (1982). But prior to August 6, 1987 no application was made to the court by the Attorney General (Acting).

**14.** *See* Order, In re Nofziger/Meese, Div. No. 87–1 (Aug. 18, 1987).

**15.** *See supra* note 4.

**16.** Extraordinary thoroughness of investigation is to be expected in some independent counsel investigations because of the "institution of the independent counsel," and the extensive nature of the investigation and report required by Congress. *Morrison v. Olson*, 487 U.S. 654, 713–14, 108 S.Ct. 2597, 2630–31, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).

ing standard for use in determining the reasonableness of the hourly rates charged by attorneys:

> [T]he hourly rate is left to the judgment of the special court using the standard of reasonableness. In determining the proper rate, the special court should consider the *prevailing community standards* and any *helpful case law.*

H.R.Conf.Rep. No. 452, 100th Cong., 1st Sess. 31 (1987), U.S.Code Cong. & Admin. News 1987, p. 2197 (emphasis added). Reasonable fees are "calculated according to the prevailing market rates in the relevant community" and the applicant must "produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *In re Donovan, supra,* at 992 & n. 19 (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 896 n. 11, 104 S.Ct. 1541, 1547, 1547 n. 11, 79 L.Ed.2d 891 (1984)); *see also In re Olson, supra,* at 1423.

██ Applying these standards to the Meese application, we find the *rates* charged by Meese's attorneys conform to local standards and hence must be held to be reasonable. Meese was represented throughout the investigation by the Washington, D.C. firm of Miller, Cassidy, Larroca & Lewin. His principal attorneys and their corresponding hourly rates were: Nathan Lewin—$300/hr.; James Rocap III—$140/hr.; and Nicki Kuckes—$100/hr. In support of these rates, the application includes a supporting affidavit dated February 1, 1989 of a qualified attorney stating that the rates are reasonable and consistent with the rates usually charged by attorneys of comparable ability in Washington, D.C. A recent survey of billing rates for partners and associates at the nation's largest firms was also filed. The affidavit and survey discharge Meese's burden of

demonstrating through independent evidence that the Miller, Cassidy rates are in line with community standards.[17]

██ We also find the rates billed for the services of several paralegals and law clerks to be reasonable. Such rates ranged from $45 to $75 per hour. However, in light of the Supreme Court's recent decision in *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), which we have previously applied to the Act, *In re Sealed Case,* 890 F.2d 451, 454 (D.C.Cir.1989) we deduct $4253.75 for services billed at these rates that were of a purely clerical nature. In *Missouri,* the Court held, *inter alia,* that "reasonable attorney's fee," under the Civil Rights Attorneys' Fees Awards Act, included work performed by paralegals and law clerks. *Missouri,* 109 S.Ct. at 2470. However, the court stated:

> It has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks ... that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.... *Of course purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them.* What the court in *Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714, 717 (CA5 1974) said in regard to the work of attorneys is applicable by analogy to paralegals: "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work ... and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal

---

**17.** In approving a rate of $300 per hour the court has some reservations. But given the Supreme Court's opinion in *Blum v. Stenson,* 465 U.S. 886, 892–896, 104 S.Ct. 1541, 1545–47, 79 L.Ed.2d 891 (1984) and *Missouri v. Jenkins, supra,* upholding "market rates," and Meese's

documentary support for his request, the court has no option. The attorney's extraordinary qualifications and supporting documentation support a finding that the rate is in line with community standards.

work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."
*Id.* 110 S.Ct. at 2471 n. 10 (emphasis added). The court therefore deducts those charges by both paralegals and law clerks for such tasks as "delivering" or "picking up" various documents as well as photocopying. In our view, such tasks are "purely clerical or secretarial" and thus cannot be billed at paralegal or law clerk rates.[18]

### 2. Reasonable Amount of Time Expended by Attorneys

In evaluating the reasonableness of the hours billed by Meese's attorneys, we are required to examine the application in light of the specific provisions of the Act as well as general case law on what constitutes hours reasonably incurred. *In re Donovan, supra,* at 993; *In re Olson, supra,* at 1427–28.

■ The Act provides only for the reimbursement of those attorneys' fees incurred "during [the] investigation." 28 U.S.C. 593(f)(1) (emphasis added). This provision permits recovery only for those fees "rendered in asserting the merits of the subject's defense against the criminal charges being investigated." *In re Olson, supra,* at 1427; *see also, In re Donovan, supra,* at 993; *In re Olson/Perry,* 892 F.2d 1073, 1074 (D.C.Cir.1990). Therefore, as with prior fee applications, we disallow $7,585 in fees claimed for the preparation of the fee application. Such fees were not for services rendered in asserting the merits of Meese's defense to the investigation. *In re Olson, supra,* at 1427–28; *In re Olson/Perry, supra,* at 1074.

■ Similarly excluded is $5,170 in fees incurred preparing Meese for his testimony in the trial of Nofziger and his testimony before a congressional subcommittee.

Such fees were not incurred in Meese's defense to the investigation by Independent Counsel McKay as both proceedings were separate and distinct from the independent counsel investigation.

■ Also excluded is $16,652 in fees incurred for responding to media inquiries.[19] As stated in *In re Donovan,* "[m]edia related activity has no bearing on the operation of an independent counsel's investigation and thus is not reasonably related to a defense to such investigation." *Id.* at 994.

■ Additionally, we shall exclude $220 in fees for the letter written on May 11, 1987 by Meese's attorneys to the Acting Attorney General, *requesting* referral of the Meese matter to Independent Counsel McKay. Such fees were not incurred *during the investigation* nor were they incurred in Meese's defense.

■ We also deduct $6335 for fees incurred by Meese *after* the filing of his response to the Independent Counsel Report on July 14, 1988. Upon the filing of the Final Report by the Independent Counsel, the investigation terminates and only those fees incurred responding to the Final Report are thereafter compensable under the Act. *See In re Donovan, supra,* at 994.

### 3. Adequacy of Documentation

■ Turning to an examination of the fee application in light of general case law concerning hours reasonably incurred, the Act requires fee requests to include "contemporaneous time records of hours worked and rates claimed, plus a detailed description of the *subject matter of the work* with supporting documents, if any." *In re Donovan, supra,* at 994 (emphasis added). Where there is inadequate documentation for the work performed during

---

18. The charges for these tasks have not been eliminated entirely. Rather, the rate has been reduced to $10 per hour which we find to be reasonable for such services.

19. While fees incurred responding to media inquiries have been excluded, no deduction is made for fees incurred by Meese's attorneys

reviewing press clippings concerning the investigation. We believe that such activity *in this case,* because of the heavy media involvement, provided useful and important information that assisted counsel in their representation of the subject and is therefore "reasonably related to a defense to [this] investigation."

the time billed the award must be reduced accordingly. *Id.* Additionally, hours must be "exclude[d] from a fee request ... that are excessive, redundant or otherwise unnecessary." *In re Olson, supra,* at 1428 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Adequate documentation is necessary for the court to satisfy its review requirement.

■ Our review of Meese's application reveals several expenses we find to be excessive or unnecessary. We disallow entirely expenses for "business meals" ($457.61), "support staff overtime" ($11,311.25), "service fee (rental fee—National Press Club)" ($345.60), and "supplies" ($884.05). *See In re Olson, supra,* at 1429. The court also finds the $28,523.73 in photocopying expenses to be excessive because of the absence of any supporting documentation. This amount is reduced by $10,000. Also, for lack of documentation, we exclude the $707 claimed as a travel expense.

■ Finally, we find numerous instances where the billing entries are not adequately documented. The time records maintained by the attorneys, paralegals and law clerks are replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed. As such it is "impossible for the court to verify [as the statute requires] the reasonableness of the billings, either as to the necessity of the particular service or the [total] amount of time expended on a given task." *In re Sealed Case, supra,* at 455. Therefore, for numerous inadequately documented billings, we will reduce the award by ten percent of the billings that remain after the other deductions described above.

## CONCLUSION

In sum, in accordance with the above analysis it is concluded that the award shall reflect the following:

1. Disallow expenses for "business meals," "support staff overtime," "service fee (rental fee—National Press Club)" and "supplies."

2. Disallow fees for preparing fee application.

3. Disallow expense for "Travel."

4. Reduce photocopying expenses by $10,000.00.

5. Disallow fees incurred after the filing of the Independent Counsel Report, except fees for filing response.

6. Disallow fees incurred preparing Meese for his testimony in *United States v. Nofziger* and before congressional subcommittee.

7. Disallow fees incurred prior to the appointment of Independent Counsel.

8. Disallow fees for media related activity.

9. Reduce fees for clerical or secretarial work performed by paralegals and law clerks.

10. After all specific deductions are made, the remaining fees will be reduced ten percent for insufficient documentation of services rendered by attorneys, paralegals and law clerks.

For the foregoing reasons, it is Ordered that petitioner be awarded $460,509.07 in reasonable attorneys' fees and expenses. The computation is set forth in the Appendix.

Judgment accordingly.

## APPENDIX

### Deductions By Subject Matter

| | | |
|---|---|---|
| 1. | Business Meals | $457.61 |
| 2. | Service Fee (rental fee Nat'l Press Club) | $345.60 |
| 3. | Support Staff Overtime | $11,311.25 |
| 4. | Supplies | $884.05 |
| 5. | Services Rendered in Preparation of Fee Application | $7,585.00 |
| 6. | Travel | $707.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7. | Excessive Photocopying | | | | $10,000.00 |

8. Fees incurred after filing of response to Independent Counsel Report:

| | | | | | |
|---|---|---|---|---|---|
| Nathan Lewin: | 9.25 | hrs.× | $300/hr. = | $2,775 | |
| James Rocap: | 16.50 | hrs.× | $140/hr. = | $2,310 | |
| Nicki Kuckes: | 10.50 | hrs.× | $100/hr. = | $1,050 | |
| Paralegal: | 4.0 | hrs.× | $50/hr. = | $ 200 | |
| | | | | $6,335 | $6,335.00 |

9. Fees incurred preparing Meese for testimony in *U.S. v. Nofziger* and before congressional subcommittee:

| | | | | | |
|---|---|---|---|---|---|
| Nathan Lewin: | 6.50 | hrs.× | $300/hr. = | $1,950 | |
| James Rocap: | 23.0 | hrs.× | $140/hr. = | $3,220 | |
| | | | | $5,170 | $5,170.00 |

10. Fees incurred prior to appointment of Independent Counsel:

| | | | | | |
|---|---|---|---|---|---|
| Nathan Lewin: | .5 hrs. | × | $300/hr. = | $150.00 | |
| James Rocap: | .5 hrs. | × | $140/hr. = | $70.00 | |
| | | | | $220.00 | $220.00 |

11. Media Related Activity:

| | | | | | |
|---|---|---|---|---|---|
| Nathan Lewin: | 28.25 | hrs.× | $300/hr. = | $8,475 | |
| James Rocap: | 50.8 | hrs.× | $140/hr. = | $7,112 | |
| Nicki Kuckes: | 9.75 | hrs.× | $100/hr. = | $975 | |
| Pete Evans: | 1.5 | hrs.× | $60/hr. = | $90 | |
| | | | | $16,652 | $16,652.00 |

| | | | |
|---|---|---|---|
| 12. | Clerical or secretarial work performed by paralegals and law clerks | | $4,253.75 |
| | | Items 1–12, Total— | $63,921.26 |
| 13. | Ten percent deduction for inadequate documentation and services rendered | | $51,167.68 |
| | | TOTAL DEDUCTION— | $115,088.94 |

| | |
|---|---|
| AMOUNT REQUESTED | $575,598.01 |
| AMOUNT DEDUCTED: (items 1–12): | $63,921.26 |
| SUBTOTAL: | $511,676.75 |
| AMOUNT DEDUCTED (item 13): | $51,167.68 |
| TOTAL AWARD: | $460,509.07 |