State of MICHIGAN, Michigan Department of Environmental Quality and State of West Virginia, Division of Environmental Protection, Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.

New England Council, Inc., et al., Intervenors.

No. 98–1497.

United States Court of Appeals, District of Columbia Circuit.

Filed July 3, 2001.

Before WILLIAMS, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The Interstate Natural Gas Association of America (hereinafter "INGAA" or "petitioner") moves for an award of attorneys' fees in the amount of $107,551.95 incurred in connection with its challenge to an Environmental Protection Agency ("EPA") regulation. *See Michigan v. EPA*, 213 F.3d 663 (D.C.Cir.2000). Briefs with accompanying billing records have been submitted by the petitioner, and the EPA has filed its opposition. After examination of the billing records and consideration of the EPA's objections, we find that INGAA is entitled to an award of attorneys' fees but not for the full amount sought. We conclude, for the reasons stated below, that INGAA is entitled to an award in the amount of $65,947.24.

## I. BACKGROUND

In the underlying litigation, INGAA, a trade association representing major interstate natural gas transmission companies in the United States, and other petitioners challenged promulgation of the EPA's "NOx SIP Call" final rule which mandated that 22 states and the District of Columbia revise their state implementation plans ("SIPs") to reduce emission of nitrogen oxides ("NOx"). The revisions were to be based upon state-specific NOx emissions "budgets" established by the EPA. For

its part, INGAA contended that the EPA, in its determination of the state NOx budgets, did not provide adequate notice and opportunity for comment on the control level assumed for large stationary internal combustion ("IC") engines (hereinafter referred to as the "control level" issue). Additionally, INGAA challenged the EPA's definition of large IC engines (hereinafter referred to as the "cut-off" issue). We agreed with INGAA on the "control level" issue and remanded it to the EPA for further consideration, but we upheld the EPA on the "cut-off" issue. *Id.* at 693–94.

## II. ANALYSIS

INGAA now seeks an award of attorneys' fees pursuant to Section 307(f) of the Clean Air Act, which provides:

> In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

42 U.S.C. § 7607(f). In our discussion below, we consider INGAA's fee petition and make certain deductions from it in light of the "reasonable" and "appropriate" standards set forth in the statute.

*Fees under Section 307(f).* The EPA argues that INGAA is not entitled to attorneys' fees in this matter because it did not achieve a sufficient degree of success in *Michigan*. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 693–94, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *see also Sierra Club v. EPA*, 769 F.2d 796, 800 (D.C.Cir. 1985). Of the two challenges made by INGAA to the EPA's NOx SIP Call, the EPA argues that one, the IC engine "cut-off" issue, was completely rejected by the Court, while the other, the IC engine "control level" issue, was remanded, without being vacated, for further consideration by the EPA and was therefore a purely pro-

cedural victory insufficient to justify an award of fees. The EPA further argues that even if it were to be assumed that INGAA is eligible to receive a fee award on the "control level" issue, since it lost on the "cut-off" issue then any fee award should be reduced by 50% to reflect that loss.

In reply, INGAA claims that fees should be awarded not only for successful substantive challenges to rules, but also for valid procedural claims, because if this were not the case then "fees would become dependent on the essentially fortuitous presence or absence of a valid procedural claim" and "[i]t would be counterproductive ... to deny attorneys' fees for *successful* litigation to enforce" procedural regularity. Brief of Petitioner at 5 (emphasis in original). INGAA further claims that *Kennecott Corp. v. EPA*, 804 F.2d 763 (D.C.Cir.1986), governs the outcome here because the facts in that case "completely parallel" the one before us. In *Kennecott*, according to INGAA, fees and costs were awarded to Kennecott in litigation establishing that the EPA did not provide adequate notice and comment because certain data were not provided during the notice and comment period.

The EPA argues in turn that the petitioner's reliance on *Kennecott* is misplaced because in that case, unlike here, the Court not only remanded the matter but also vacated the challenged portion of the regulation. Instead, the EPA would have us rely on *Sierra Club v. EPA* and *Environmental Defense Fund v. Reilly*, 1 F.3d 1254 (D.C.Cir.1993). In *Sierra Club*, fees were denied for a remanded issue where no substantive relief was granted and the agency could possibly justify its position with no reformulation of the challenged rule. 769 F.2d at 806. And the EPA relies on the Court's statement in *Environmental Defense Fund* that "a plaintiff

that has obtained a remand for further proceedings is not at that point a 'prevailing party' for the purpose of collecting its attorney's fee." 1 F.3d at 1257.

■ We note that the Court in *Environmental Defense Fund*, after making the statement relied on by the EPA quoted above, went on to explain that attorneys' fees may be awarded only if the plaintiff ultimately succeeds on the merits and that the rationale behind this rule was to avoid awarding fees for "corrective efforts that yield no real world benefit." *Id.* at 1257 (internal citation and quotation omitted). Unlike *Sierra Club*, the underlying litigation in *Environmental Defense Fund*, as here, concerned a lack of public notice and comment. Specifically, the merits panel there vacated an EPA rule for want of notice and comment before promulgation. Although the EPA opposed an award of attorneys' fees in that case because it claimed, as it does here, that the petitioner's victory was "purely procedural," the Court stated that even though the petitioner was not assured of being able to change the EPA's proposed regulation, having the chance to comment on the proposal was "in itself something of value in the real world." *Id.* So too here. By obtaining the right to notice and comment on the IC engine "control level" issue, INGAA has achieved a sufficient degree of success on the merits to entitle it to an award of attorneys' fees.

We further note that this Court has previously determined that a party is not entitled to attorneys' fees under Section 307(f) for time spent on an issue on which it was wholly unsuccessful. *See, e.g., Sierra Club*, 769 F.2d at 802. INGAA is therefore not entitled to an award of attorneys' fees on the IC engine "cut-off" issue. INGAA does not dispute this and calls our attention to the deduction it has already made of 23% of the time spent on its merits and reply briefs ($6,199.42), which

it argues constitutes the amount of time spent on the briefs on the "cut-off" issue. We find this amount to be a reasonable deduction and will make no further deductions concerning this issue.

■ *Fees for administrative proceedings.* The government claims that many of the attorneys' fees sought by INGAA were incurred in connection with its administrative petition filed with the EPA, and therefore fall outside the award parameters of Section 307(f). We agree. In *Ruckelshaus v. Sierra Club*, which also concerned a request for attorneys' fees filed pursuant to Section 307(f), the Court reminded us that "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney's fees. Waivers of immunity must be construed strictly in favor of the sovereign ... and not enlarge[d] ... beyond what the language requires." 463 U.S. at 685, 103 S.Ct. 3274 (internal quotations and citations omitted). As the language of Section 307(f) requires awards only for "costs of litigation," then fees incurred in the preparation of an administrative petition are excluded. *See Sierra Club v. Gorsuch*, 672 F.2d 33, 42 (D.C.Cir.1982), *rev'd on other grounds, Ruckelshaus v. Sierra Club, supra* (petitioners seeking fees under Section 307(f) "not entitled to an award of attorneys' fees for their participation in the administrative proceedings preceding their appeal"). We will therefore make deductions for those entries referencing "petition." As many of these entries are grouped with other entries for the same date, for purposes of making the deductions we will assume that each entry for that date took up an equal amount of time. We will thus divide the number of entries for each date into the amount billed, and deduct that amount from the total amount petitioned. *See In re Pierce (Abrams Fee Application)*, 190 F.3d 586, 594 (D.C.Cir.,

Spec. Div., 1999). The specific deductions
are listed below.

| Date | Entry re "Petition" | Number of Entries for Date | Amount Billed for Date | Amount Deducted |
|------|---------------------|---------------------------|------------------------|-----------------|
| 1/21/99 | "work on petition for reconsideration" | 2 | $ 609.50 | $ 304.75 |
| 1/22/99 | "finalize draft petition for reconsideration; telephone conference with INGAA regarding format and petition issues" | 4 | $ 627.00 | $ 313.50 |
| 1/26/99 | "telephone conferences with S. Schnee regarding petition issues, L. Beal regarding petition and format issues" | 4 | $1,006.50 | $ 503.25 |
| 2/11/99 | "Write petition for Reconsideration" | 1 | $1,404.50 | $ 1,404.50 |
| 2/11/99 | "Research and draft revised petition" | 2 | $1,287.00 | $ 643.50 |
| 2/12/99 | "Write Petition for Reconsideration" | 2 | $1,643.00 | $ 812.50 |
| 2/15/99 | "Draft petition" | 3 | $1,138.50 | $ 379.50 |
| 2/16/99 | "Draft petition . . . ; research same" | 4 | $ 610.50 | $ 305.25 |
| 2/17/99 | "Edit petition" | 2 | $ 330.00 | $ 165.00 |
| 2/18/99 | "Draft petition" | 2 | $ 742.00 | $ 371.00 |
| 2/18/99 | "Draft . . . petition . . . ; research regarding same" | 4 | $1,468.50 | $ 734.25 |
| 2/19/99 | "Edit and send out . . . petition" | 3 | $1,457.50 | $ 485.83 |
| 2/19/99 | "Edit and revise . . . petition" | 2 | $1,006.50 | $ 503.25 |
| 2/24/99 | "Work on . . . petition" | 2 | $1,563.50 | $ 781.75 |
| 2/25/99 | "Finish brief petition; review and edit" | 3 | $1,643.00 | $ 1,095.33 |
| 2/25/99 | "Revise petition" | 4 | $1,122.00 | $ 280.50 |
| 2/26/99 | "Revise petition" | 3 | $ 990.00 | $ 330.00 |
| 2/28/99 | "Revise petition" | 5 | $1,683.00 | $ 336.60 |
| 3/1/99 | "Review comments on petition" | 2 | $ 148.50 | $ 74.25 |
| 3/2/99 | "Revise . . . petition" | 3 | $ 841.50 | $ 280.50 |
| 3/3/99 | "Final revised . . . petition" | 3 | $ 214.50 | $ 71.50 |
| 3/5/99 | "revise petition" | 3 | $1,192.50 | $ 397.50 |
| 3/5/99 | "Research APA petitions" | 1 | $ 49.50 | $ 49.50 |
| 3/6/99 | "Research APA petitions" | 1 | $ 396.00 | $ 396.00 |

| 3/8/99 | "Revise petition for reconsideration to comply with APA" | 2 | $ 412.50 | $ 206.25 |
|---|---|---|---|---|
| 3/15/99 | "Finalize petition for reconsideration; review edits from INGAA members" | 2 | $ 462.00 | $ 462.00 |
| 3/16/99 | "Handle petition for generation and filing" | 1 | $ 462.00 | $ 462.00 |

Total Deduction:     $12,149.76

■ *Fees for client service matters.* The EPA objects to approximately 20 hours of attorney time for certain entries that do not directly relate to litigation, i.e., entries having to do with retainer agreements, conflicts checks, strategy memos, and client updates. INGAA replies that time spent on litigation strategy is indistinguishable from litigation itself and that time spent on keeping a client informed of the status of a matter, and similar tasks, are necessary and directly related to the litigation. We find INGAA's argument to be reasonable and will make no deductions for these entries.

■ *Fees for briefs.* The government challenges approximately 110 hours that INGAA spent on researching and writing its briefs. These hours are excessive, argues the government, particularly considering the approximately 125 hours spent on the preparation of INGAA's administrative petition which presented essentially identical arguments. We agree that over two and one-half weeks of attorney time spent on briefs in this matter appears to be unduly high, and we will therefore make a downward adjustment for these fees.

According to the government, no more than 40 hours for the opening brief and 20 hours for the reply brief should be allowed. As we have already stated, many if not most of the billing descriptions submitted in this matter are scanty, and therefore it is difficult for us to make precise estimates of time spent on individual tasks. It would

appear, however, that of the approximately 110 hours spent on the briefs, 90 were spent on the opening brief and 20 on the reply brief. As 20 hours of reply brief time appears to be reasonable, we will make no adjustment to it. We will, however, reduce by one-half the 90 hours spent on the opening brief. *See American Petroleum Inst. v. EPA,* 72 F.3d 907, 917 (D.C.Cir.1996) (excessive time spent on brief reduced by one-half). In calculating the amount to be deducted, we will take the average of the billing rates of the two attorneys who worked on this matter and multiply this number by 45, producing a total deduction of $9,675.00.

■ *Inadequate documentation.* The government argues that we should disallow much of INGAA's fee claim because the work descriptions in its billing entries are vague and contain no useful breakdown of professional time by task. A review of the billings finds that there are indeed numerous deficient entries, such as those listed only as "conference calls" with no indication of who these calls were with or what they concerned. We have stated previously that "[s]uch description fails to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable," and thus cannot be charged to the taxpayers. *In re Donovan,* 877 F.2d 982, 995 (D.C.Cir. 1989) (quotation marks omitted); *see also American Petroleum Institute,* 72 F.3d at 915. Additionally, there are several entries for conference calls with individuals

referenced as "L. Beal," "P. Torangeau," "D. Malzahn," or "Perciasepe," who are not further identified in the petition. As such, the reasonableness of these calls also cannot be determined. *In re Donovan,* 877 F.2d at 995. We therefore must deduct the full amount of all these entries from the fee request. We will make specific deductions using the process utilized for making deductions for "petition" references, *supra.*

| Date | Wholly Deficient Entry | Number of Entries for Date | Amount Billed for Date | Amount Deducted |
|---|---|---|---|---|
| 1/20/99 | "Conference call" | 4 | $1,616.50 | $ 404.12 |
| 1/21/99 | "Telephone conferences" | 2 | $ 609.50 | $ 304.75 |
| 1/25/99 | "Prepare for and take part in conference call" | 1 | $ 450.50 | $ 450.50 |
| 2/4/99 | "Prepare for and take part in conference call" | 1 | $ 371.00 | $ 371.00 |
| 2/5/99 | "Prepare for and take part in conference call" | 1 | $ 344.50 | $ 344.50 |
| 2/26/99 | "review emails" | 2 | $ 79.50 | $ 39.75 |
| 3/2/99 | "write emails" | 2 | $ 265.00 | $ 132.50 |
| 3/5/99 | "Two conference calls" | 3 | $1,192.50 | $ 397.50 |
| 3/8/99 | "review and comment on fax; send email" | 3 | $ 238.50 | $ 159.00 |
| 3/16/99 | "Conference call" | 4 | $ 927.50 | $ 231.87 |
| 3/23/99 | "conference call" | 3 | $1,484.00 | $ 494.66 |
| 4/13/99 | "Telephone conference with L. Beal" | 1 | $ 79.50 | $ 79.50 |
| 4/15/99 | "Finish and send out draft letter to Perciasepe" | 1 | $ 291.50 | $ 291.50 |
| 4/16/99 | "email L. Beal" | 3 | $ 185.50 | $ 61.83 |
| 4/20/99 | "conference call; review Perciasepe letter" | 4 | $ 556.50 | $ 278.25 |
| 4/21/99 | "Telephone conference with P. Torangeau" | 3 | $ 556.50 | $ 185.50 |
| 4/22/99 | "telephone conference with P. Torangeau" | 2 | $ 556.50 | $ 278.25 |
| 7/15/99 | "Telephone conference with L. Beal" | 1 | $ 79.50 | $ 79.50 |
| 10/22/99 | "Prepare for, take part in conference call" | 1 | $ 185.50 | $ 185.50 |
| 10/28/99 | "write email" | 3 | $1,139.50 | $ 379.83 |
| 11/8/99 | "prepare for and take part in conference call" | 2 | $1,192.50 | $ 596.25 |
| 11/10/99 | "Telephone conference with ... D. Malzahn" | 2 | $ 132.50 | $ 66.25 |

| | | | | |
|---|---|---|---|---|
| 11/14/99 | "Prepare for conference call" | 1 | $ 79.50 | $ 79.50 |
| 11/15/99 | "Conference call" | 2 | $ 265.00 | $ 132.50 |
| 2/7/00 | "Review and respond to emails" | 1 | $ 110.00 | $ 110.00 |
| 2/15/00 | "Prepare for and take part in conference call" | 2 | $ 907.50 | $ 453.75 |
| 2/28/00 | "telephone conference with L. Beal" | 3 | $ 330.00 | $ 110.00 |
| 2/29/00 | "Take part in 2 conference calls" | 1 | $ 495.00 | $ 495.00 |
| 3/17/99 | "Conference call" | 4 | $1,696.00 | $ 424.00 |
| 3/19/99 | "two conference calls with C. L. Beal" | 2 | $ 901.00 | $ 450.50 |
| Total Deduction: | | | | $8,067.56 |

Notwithstanding the deduction of these wholly deficient entries, the billing documents are replete with instances of inadequately detailed descriptions.[1] There are, in particular, numerous entries concerning meetings and conferences that, although they include information concerning the identities of the individuals involved, are nevertheless devoid of any descriptive rationale for their occurrence. Therefore, as we have done in similar circumstances in the past, after all other deductions have been taken we will make a further deduction of 10% of the remaining billings. *See Abrams Fee Application,* 190 F.3d at 594; *In re Meese,* 907 F.2d 1192, 1204 (D.C.Cir., Spec. Div., 1990) (per curiam).

■ *Fees for clerical tasks.* The EPA claims that certain of INGAA's billing entries are for purely clerical tasks such as copying and pick up or delivery of documents, and are therefore not reimbursable because they ought to be considered part of normal administrative overhead. We agree that four of INGAA's entries fall into this category. On January 28, 1999, Legal Assistant Lisa Edouard billed one and one-half hours to "[f]ile documents at U.S. Court of Appeals for J. Knight." This is a task routinely performed by other less expensive personnel, such as messengers, and cannot be charged to the public fisc. On March 24, 1999, Edouard billed one-half hour to "[r]eproduce and fed ex documents to EPA personnel for J. Knight." She billed two hours on October 28, 1999, to "[o]btain" documents from the EPA. Likewise, on November 4, 1999, she

---

1. See, for example, time entries for 1/13/99 ("Telephone conference with client; conference with J. Knight"); 1/14/99 ("conference with J. Knight; review record"); 1/15/99 ("Review materials; conference with J. Knight; telephone conference with A. Field"); 1/17/99 ("Review record; meet with J. Knight"); 1/18/99 ("Review of record documents; meet with W. Pedersen"); 1/19/99 ("fax to J. Dreskin"); 2/8/99 ("telephone conference with J. Dreskin"); 2/9/99 ("telephone conference with P. Lacey and J. Dreskin"); 2/12/99 ("confer with J. Knight"); 2/18/99 ("confer with J. Knight"); 2/23/99 ("Review record"); 2/23/99 ("Record review"); 2/25/99 ("confer with J. Knight"); 2/26/99 ("Confer with J. Knight"); 2/28/99 ("Confer with J. Knight"); 3/4/99 ("telephone conference with A. Field of Hunton & Williams"); 3/3/99 ("conference with J. Knight"); 11/17/99 ("Email to J. Knight regarding conference call"); 11/18/99 ("Conference with J. Knight"); 4/2/01 ("Conference with J. Knight"); 4/8/01 ("conference with J. Knight").

entered a half-hour to "obtain" a Federal Register notice. Again, such tasks could be undertaken by clerical, not legal, personnel, and we will deduct the full amount ($427.50) of these entries. *See American Petroleum Inst.*, 72 F.3d at 913; *In re Meese*, 907 F.2d at 1202–03.

■ *Fees for staff overtime.* The government objects that fees in the amount of $679.20 for "staff overtime" should be disallowed because such fees should more properly be considered as part of normal overhead. We agree, and will deduct this amount from the fee request. *See In re North (Bush Fee Application)*, 59 F.3d 184, 195 (D.C.Cir., Spec.Div., 1995) (per curiam).

■ *Fees for document production.* The government objects to INGAA's claim for $4,261.75 in "document production" costs because no further explanation for this category is given in the billing entries. In the past we have made deductions for comparable fees because of a lack of supporting documentation, and we will do so here, reducing the amount by $2,000. *See In re North (Gregg Fee Application)*, 57 F.3d 1115, 1117 (D.C.Cir., Spec. Div., 1995); *In re Meese*, 907 F.2d at 1204. Likewise, INGAA claims a total of $2,114.49 for computer research, which also lacks any supporting documentation, and we therefore will reduce this amount by $1,000. *Id.*

■ *Fees for travel and long-distance expenses.* The government challenges INGAA's inclusion of $996.03 in travel and $396.86 in long-distance expenses, arguing that it is unclear how such fees could arise when INGAA and the EPA, as well as their attorneys, are all located in Washington, D.C. In reply, INGAA informs us that most of these fees were incurred during the settlement negotiations, which included a trip to North Carolina where the EPA's technical staff is located. We find

this explanation reasonable and will make no deductions for these items.

■ *Fees for local transportation.* INGAA claims $278.22 for "local transportation," with no explanation as to why this transportation was needed. As we have stated in the past, we cannot assess the reasonableness of this item when it is otherwise not explained. *In re North (Shultz Fee Application)*, 8 F.3d 847, 852–53 (D.C.Cir., Spec. Div., 1993) (per curiam). We will therefore make a reduction for the full amount.

■ *Fees for fees.* In its fee petition, INGAA includes 43.5 hours of attorney time for work done in connection with its fee petition, as well as 29.7 hours for time spent on its reply brief. The government, although not disputing that "fees for fees" are recoverable under the CAA, *see, e.g., American Petroleum Inst.*, 72 F.3d at 918, argues that the amount prayed for is excessive because, of the 43.5 fee petition hours billed, only nine were spent on preparing the petition *per se* while the remaining hours were spent on preceding unsuccessful fee negotiations with the EPA which should not be reimbursable. INGAA replies that the time spent preparing for the fee negotiation was also necessary to prepare the petition after the negotiations failed, and that much of the time spent negotiating was at the request of the government. We find INGAA's argument to be persuasive and note that the time requested is comparable to the amount of fee petition time we have allowed elsewhere. *Id.* We will therefore not make any deductions from the requested amount.

■ *Miscellaneous fees.* The EPA objects to approximately 40 total hours of attorney time spent on various items that according to the EPA "do not appear to be associated with INGAA's claims in this

litigation." First, the EPA argues that fees for a stay motion that was never filed should not be awarded. INGAA counters that the motion "was an integral part of INGAA's litigation settlement strategy because it increased INGAA's leverage with the agency," and that it was never filed because the state petitioners' stay motion was granted beforehand. The EPA also objects to time spent on an economic incentives memo whose relationship to the case was not explained. INGAA retorts that the memo concerned an analysis of market-based approaches to control of IC engines, and that such approaches were discussed during settlement talks. Finally, the EPA takes issue with the time spent on research on ripeness, standing, and delegation issues, none of which were ever raised. INGAA replies that its strategy required it to analyze not only the issues that were eventually litigated but also issues that might be litigated, such as a possible government claim that INGAA did not have standing or that the case was not ripe since the SIP call did not directly require states to regulate IC engines. For each of these items we find the petitioner's response to be reasonable and no deductions will be made.

## CONCLUSION

For the reasons set forth above, it is ordered that petitioner be awarded $65,947.24 in reasonable attorneys' fees it incurred in connection with this Court's decision in *Michigan* and this fee petition. The computation is set forth in the appendix.

**Appendix**

| | | |
|---|---|---:|
| Total Fee Request | | $107,551.95 |
| Deductions in Opinion | | |
| 1. | Fees for administrative proceedings | 12,149.76 |
| 2. | Fees for briefs | 9,675.00 |
| 3. | Wholly inadequate documentation | 8,067.56 |
| 4. | Fees for clerical tasks | 427.50 |
| 5. | Fees for staff overtime | 679.20 |
| 6. | Fees for document production | 2,000.00 |
| 7. | Fees for computer research | 1,000.00 |
| 8. | Fees for local transportation | 278.22 |
| | Total of specific deductions | $ 34,277.24 |
| | Request minus specific deductions | $ 73,274.71 |
| 9. | 10% deduction for insufficient descriptions | $ 7327.47 |
| | **TOTAL AWARD** | $ 65,947.24 |