UNITED STATES of America

v.

Jim Guy TUCKER, William J. Marks, Sr., and John H. Haley.

No. LR–CR–95–117.

United States District Court, E.D. Arkansas, Western Division.

Sept. 5, 1995.

■ ■ ■

William H. Sutton, Friday, Eldredge & Clark, James Jacob Lessmeister, Arnold, Grobmyer & Haley, Little Rock, AR, George B. Collins, Collins & Bargione, Chicago, IL, for defendant Jim Guy Tucker.

H. Campbell Zachry, Robert Edwin Davis, Jenkens & Gilchrist, Dallas, TX, for defendant William J. Marks, Sr.

Ted Boswell, Boswell, Tucker & Brewster, Bryant, AR, Curtis L. Bowman, Jack, Lyon & Jones, P.A., Little Rock, AR, for defendant John H. Haley.

William Hickman Ewing, Jr., Office of Independent Counsel, Little Rock, AR, for U.S.

## MEMORANDUM OPINION

WOODS, District Judge.

Separate defendant Jim Guy Tucker has moved to dismiss the indictment in this case on the ground that the Independent Counsel exceeded his jurisdiction. The Independent Counsel, by way of response, asserts: (1) that the indictment of the defendants in this case falls within the scope of his prosecutorial jurisdiction; and (2) that even if does not, the referral of the matter to him, as independent counsel, is not subject to judicial review.

## I. The Original Authorization for the Investigation of the Defendants.

The Ethics in Government Act of 1978, as amended by the Independent Counsel Reauthorization Act of 1994, 28 U.S.C. §§ 591–599 (hereinafter the "Independent Counsel Act"), permits the Attorney General to request that independent counsel be appointed when preliminary investigation discloses that certain high officials in the Executive Department may have violated the law. 28 U.S.C. § 591(b). Other persons can come within the ambit of the Act if they cannot be investigated and prosecuted by an officer of the Department of Justice without the appearance of a personal, financial, or political conflict of interest. 28 U.S.C. § 591(c)(2).

An independent counsel is appointed by a special three-judge court of the United States Courts of Appeals for the District of Columbia, called the "Special Division." It is significant that the Special Division defines the independent counsel's prosecutorial jurisdiction. This is clear from the first sentence of 28 U.S.C. § 593(b)(3): *"In defining the independent counsel's prosecutorial jurisdiction,* the division of the court shall assure that the independent counsel has adequate authority to fully investigate and prosecute the subject matter with respect to which the Attorney General has requested the appointment of the independent counsel, and *all matters related to that subject matter."* (Emphasis added.)

Congress reauthorized the original Ethics in Government Act on June 30, 1994, with a few changes. However, prior to the reenactment of the Independent Counsel Act, the Attorney General had conducted an investigation into a land development venture called "Whitewater" in which President Bill Clinton and Mrs. Hillary Rodham Clinton were investors, along with another partner, James McDougal. Because there was no independent counsel act in effect at the time, the Attorney General herself named Robert B. Fiske, Esquire, as independent counsel to further investigate the Whitewater venture.

After the reenactment of the Independent Counsel Act, the Special Division replaced Mr. Fiske with Kenneth Starr, Esquire, and authorized a continuation of the Whitewater investigation in the following terms:

Upon consideration of the application of the Attorney General pursuant to 28 U.S.C. § 592(c)(1)(A) for the appointment of an independent counsel with authority to exercise all the power, authority and obligations set forth in 28 U.S.C. § 594, to investigate whether any individuals or entities have committed a violation of federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Asso-

ciation, Whitewater Development Corporation, or Capital Management Services, Inc.; it is

ORDERED by the Court in accordance with the authority vested in it by 28 U.S.C. § 593(b) that Kenneth W. Starr, Esquire, of the District of Columbia bar, with offices at Kirkland and Ellis, 655–15th Street, NW, Washington, DC 20005, be and he is hereby appointed Independent Counsel with full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether any individuals or entities have committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc. The Independent Counsel shall have jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, *by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation.* (See Exhibit A.) (Emphasis added.)

Such was the jurisdictional authority defined by the Special Division, which had the sole statutory duty to define such jurisdiction.

In affixing this limitation on the jurisdictional grant, the Special Division was undoubtedly mindful of the *caveat* of the Supreme Court of the United States in *Morrison v. Olson:*

[W]e do not think that Congress may give the Division *unlimited* discretion to determine the independent counsel's jurisdiction. In order for the Division's definition of the counsel's jurisdiction to be truly "incidental" to its power to appoint, the jurisdiction that the court decides upon must be demonstrably related to the factual circumstances that gave rise to the Attorney General's investigation and request

for the appointment of the independent counsel in the particular case.

487 U.S. 654, 679, 108 S.Ct. 2597, 2612, 101 L.Ed.2d 569 (1988) (Emphasis original).

What "gave rise to the Attorney General's investigation and request for the appointment of the independent counsel in the particular case" was that the President was a "person" requiring appointment of an Independent Counsel. [28 U.S.C. § 591(b)(1).]

■ The subject matter of the indictment at issue here bears no relation whatsoever to the Clintons or James McDougal or their relationship with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc. The following affidavit of Governor Tucker, dated July 7, 1995, and attached to his motion to dismiss the indictment on jurisdictional grounds has not been controverted:

Jim Guy Tucker, on oath, states as follows:

1. I am not and have never been a part of the Executive Branch of the United States Government.

2. I have examined the indictment in this case. To my certain knowledge no member of the Executive Branch of the United States Government participated in any transaction to which the indictment refers.

3. To my certain knowledge neither the President of the United States nor his First Lady have had any connection whatever with the business matter called, in the indictment, "LMS," Cablevision Management, Inc. ("CMI") or any other entity to which the indictment refers.

Further Affiant sayeth not. /s/ Jim Guy Tucker. (See Exhibit B.)

The Independent Counsel has come forward with no evidence to refute facts recited in the affidavit. Nor has he alleged a connection of any kind between Governor Tucker and President Clinton. This is not surprising. The Court takes judicial notice of the fact that President Clinton and Governor Tucker were political opponents during the years covered by this indictment. In 1982,

Tucker opposed Clinton in the Democratic primary for Governor of the State of Arkansas. In 1990, when President Clinton made his last race for Governor of Arkansas, Tucker threatened to oppose him until virtually the last moment and then decided to run for Lieutenant Governor. The fact that these two men have been leaders of opposing factions in the Democratic party in Arkansas is well-known. That they would have been connected in any type of business venture in the period covered by the indictment would be highly unlikely, and Tucker's uncontroverted affidavit establishes this.

In fact, in his response to defendant's motions attacking jurisdiction, independent counsel conceded that there is no connection between the facts alleged in the indictment and the Clintons, McDougal and Capital Management Services, Inc. "Although the facts do not link Defendants to a specific relationship among CMS, the Clintons, or James B. McDougal, the Attorney General reasonably concluded that the LMS [Landowners Management System, subject of Count III of the indictment] matter was 'related to the independent counsel's prosecutorial jurisdiction' under Section 594(e) sufficiently to fall within that jurisdiction." (Response of the United States to Defendants' Motion to Dismiss Indictment for Lack of Jurisdiction, p. 38.) How can it be said that the Attorney General *reasonably* concluded that there was a connection between the matter in the indictment and the Clintons and McDougal, if there was no actual connection? The position of the Independent Counsel is that whether the Attorney General's conclusion was reasonable or not, such conclusion is not subject to review by a district court, or by any court for that matter. This issue will be dealt with *infra.*

## II. The Grant of Supplemental Authorization.

The Independent Counsel went back to the Attorney General with the request that the Attorney General seek authorization under 28 U.S.C. § 594(e) from the Special Division to investigate matters alleged in Count III of the indictment.[1] For some unknown reason, no request was ever made regarding the

allegations contained in Counts I and II of the indictment. The Attorney General responded to the Independent Counsel by letter dated September 2, 1994:

> The Attorney General has received your letter of August 31, 1994 requesting that the Department of Justice refer to the Office of Independent Counsel/Madison Guaranty Bank related matters pursuant to 28 U.S.C. § 594(e). After reviewing your description of the information developed in the course of the investigation conducted by the Office of Independent Counsel, she has concluded that these matters are related to your investigation and that referral to your Office would be appropriate. We therefore refer investigative and prosecutorial jurisdiction over the following matters to your Office:
>
> (1) Whether any person committed any federal crime relating to the bankruptcy action entitled *In Re: Landowners Management System, Inc., Tax Identification No. 75–2001914, Debtor,* United States Bankruptcy Court, Northern District of Texas, Case No. 787–70392 (Chapter 11) ... (See Exhibit C.)

The Special Division issued an order of December 19, 1994, and this order provided in pertinent part as follows:

> Upon consideration of the Application for Order of Referral and Order of Jurisdiction of Independent Counsel filed under seal, it is
>
> HEREBY ORDERED that investigative and prosecutorial jurisdiction over the following matters be referred to the Independent Counsel Kenneth W. Starr and to the Office of the Independent Counsel (hereinafter collectively "the Office") as related matters pursuant to 28 U.S.C. § 594(e):
>
> Whether any person committed any federal crime relating to the bankruptcy action entitled *In Re: Landowners Management System, Inc., Tax Identification No 75–2001914, Debtor,* United States Bankruptcy Court, Northern District of Texas, Case No. 787–70392 (Chapter 11) ... (See Exhibit D.)

---

1. Section 594(e) deals with referral of "other matters" to an independent counsel.

However, this order contained the following limitations after the grant of authority mentioned above:

IT IS FURTHER ORDERED that, as a result of the referral of the above-described matters and the jurisdictional grant made by this Court on August 5, 1994, Kenneth W. Starr has full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the Independent Counsel Authorization Act of 1994 whether any individuals or entities have committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.

The Independent Counsel further has jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation ... (See Exhibit D.)

Obviously, from the Special Division's own order, the supplemental investigation was required to be "connected with or arising out of that investigation." "That investigation" is the investigation of the Clintons and McDougal mentioned in the preceding paragraphs.

In placing such a limitation on the jurisdiction of the independent counsel, the Special Division may well have had in mind the Supreme Court's interpretation of 28 U.S.C. § 594(e) in *Morrison v. Olson.*

In our view, this provision does not empower the court to expand the original scope of the counsel's jurisdiction; that may be done only upon request of the Attorney General pursuant to § 593(c)(2). *At most, § 594(e) authorizes the court simply to refer matters that are "relate[d] to the independent counsel's prosecutorial jurisdiction," as already defined.*

487 U.S. 654, 680, n. 18, 108 S.Ct. 2597, 2613, n. 18, 101 L.Ed.2d 569 (1988) (Emphasis added).

### III. The Power to Review the Attorney General's Referral of the Matters Contained in Count III to the Independent Counsel.

It is obvious that the matters contained in Count III of the indictment, which the Attorney General has referred to the Independent Counsel, are completely unrelated to the Clintons and McDougal. Even though 28 U.S.C. § 594(e) under which the referral was made requires that the Attorney General "refer to the independent counsel matters related to the independent counsel's prosecutorial jurisdiction," the Attorney General and Independent Counsel argue that the referral is not reviewable. It is not reviewable even if completely wrong and without support in the statute or in the order of the Special Division.

I cannot accept the proposition that a citizen can be put on trial in my court for a loss of his liberty and that no court has the power to determine whether there is jurisdiction to proceed in the matter.

The Attorney General argues on page 18 of her brief: "Under the terms of Section 594(e), the process does not even require the involvement of the Special Division." While the wording of 28 U.S.C. § 594(e) may be susceptible to such an interpretation, the Supreme Court has indicated that referrals under this section are a part of the powers and duties of the Special Division:

The Act also vests in the Special Division various powers and duties in relation to the independent counsel that, because they do not involve appointing the counsel or defining his or her jurisdiction, cannot be said to derive from the Division's Appointments Clause authority. These duties include ... referring matters to the counsel upon request, § 594(e)....

*Morrison v. Olson,* 487 U.S. 654, 680, 108 S.Ct. 2597, 2613.

But even assuming that the Independent Counsel is correct and that it is not necessary for the Attorney General to seek approval of the Special Division before refer-

ring matters to the Independent Counsel, the Attorney General faces the same jurisdictional obstacles as the Special Division. 28 U.S.C. § 594(e) requires referral only as to "matters related to the independent counsel's prosecutorial jurisdiction."

Significantly, the Attorney General, through Mr. Keeney, the Acting Assistant Attorney General, made the following statement in the letter of September 2, 1994, to Mr. Starr, in regard to the bankruptcy matter:

> To the extent you determine that aspects of these matters which might fall technically within the broad scope of your jurisdiction are not sufficiently related to your mandate to warrant handling by your office, you may refer those aspects back to the Department of Justice for handling pursuant to 28 U.S.C. § 597(a).

Thus, we have clear recognition by the Attorney General that the matters in the indictment must be "sufficiently related to your mandate." Not only were the matters contained in the indictment insufficiently related to the mandate, they were not related at all.

In the matter at bar, the Attorney General did not attempt to proceed without the involvement of the Special Division. Even so, there are limits on the scope of prosecutorial jurisdiction which the Special Division can confer:

> We emphasize, nevertheless, that the Special Division has *no* authority to take any action or undertake any duties that are not specifically authorized by the Act. The gradual expansion of the authority of the Special Division might in another context be a bureaucratic success story, but it would be one that would have serious constitutional ramifications.... [T]he Division's exercise of unauthorized powers risks the transgression of the constitutional limitations of Article III that we have just discussed.

*Morrison v. Olson,* 487 U.S. 654, 684–685, 108 S.Ct. 2597, 2615–2616 (Emphasis original). In a footnote to the last sentence, the Court stated: "After all, in order to decide whether to refer a matter to the counsel, the court must be able to determine whether the matter falls within the scope of the original grant. See n. 18, *supra.*" 487 U.S. at 680 n. 18, 108 S.Ct. at 2613 n. 18. (Footnote 18 is quoted in its entirety, *supra.*) Surely the Independent Counsel and Attorney General do not suggest that there can be no judicial review of prosecutorial jurisdiction of an independent counsel. If this were so, the Special Division would be virtually the only court in American jurisprudence, save the Supreme Court of the United States, whose decisions are subject to no judicial review whatsoever, regardless of whether those decisions are patently contrary to law. Such a precedent would be both novel and dangerous.

The Independent Counsel finds a nexus to the Clintons and McDougal to satisfy the above requirements in the fact that, while investigating their relationship to Capital Management Services, Inc., counsel fortuitously stumbled across the defendants' alleged violation of the law. (See Response of United States to Defendants' Motions to Dismiss Indictment for Lack of Jurisdiction. p. 36.) In support, the Independent Counsel quotes from *United States v. Secord,*: "To determine that one occurrence is 'related' to another, one need only show that there is a reasonable causal or logical connection between the two, some tenable correlation between events." 725 F.Supp. 563, 566 (D.D.C. 1989). The relation between the indictment herein and McDougal or the Clintons falls far short of this test.

The facts demonstrating the alleged relationship are stated by the Independent Counsel as follows: "Information that Defendant Tucker may have asserted a claim as a creditor in a fraudulent bankruptcy filed by Landowners Management Systems, Inc., was first provided to Independent Counsel Fiske by a witness in the investigation of Capital Management Services, Inc. Additional investigation determined that an allegedly fraudulent loan from Capital Management Services was used as collateral to finance the purchase of cable television interests...." (See Response of United States, *supra,* p. 37.)

This argument is without merit because the "original jurisdiction order" only deals

with Capital Management Services, Inc. in the following context: "... whether any individuals or entities have committed a violation of federal criminal law ... relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc." (See Exhibit A, order of Special Division, dated August 5, 1994.)

The original grant thus was only in reference to the Clintons' and McDougal's relationship to Capital Management Services, Inc., not to anyone else's relation to this entity. For another individual or entity to be related, such individual or entity would necessarily have to be involved in the Clintons' or McDougal's relationship to Capital Management Services, Inc.

The Independent Counsel goes on to say: "These facts show that the matters under indictment are related to the subject matter of the Independent Counsel's investigation." These facts show nothing of the kind, which Independent Counsel concedes in the next sentence: "Although the facts do not link Defendants to a specific relationship among CMS, the Clintons or James B. McDougal...."

In a footnote on page 38 of his brief on jurisdiction, the Independent Counsel argues that there is a relation in the fact that Capital Management Services, Inc. is one of the entities listed in the grant of original jurisdiction and the Count III allegations were discovered during the investigation of this entity. As stated above, the record is devoid of evidence of *any* relationship or connection between the Clintons and McDougal and any of the matters alleged in the indictment.

 Admittedly, certain actions of the Attorney General are not subject to review. The decision to refer or not to refer a matter to the Independent Counsel is not subject to review. Whether to investigate a person and whether to require appointment of an independent counsel is not subject to review. The cases cited on this issue are not on point and are thus not persuasive. *Dellums v. Smith,* 797 F.2d 817 (9th Cir.1986) involved a suit by a member of Congress and two private citizens over the Attorney General's failure to conduct a preliminary investigation of a particular allegation. The Ninth Circuit held that, "failure to discharge these duties is not subject to federal court challenge by private citizens." In *Banzhaf v. Smith,* 737 F.2d 1167, 1170 (D.C.Cir.1984), the question was whether refusal to conduct a preliminary investigation is reviewable.

All of these situations are a far cry from the question of whether the trial court has jurisdiction—whether the Attorney General and the Special Division completely exceeded their authority in referring a non-related matter to the Independent Counsel. In at least one instance, the action of the Attorney General in referring a matter to the independent counsel was reviewed by the Special Division. The Special Division found that the matter had been improperly referred by the Attorney General because of lack of prosecutorial jurisdiction. See, *In Re: Meese,* 907 F.2d 1192, 1199–1201 (D.C.Cir.1990). The *Meese* Opinion includes a quote from the Application to Define Jurisdiction of Independent Counsel made by James C. McKay, independent counsel in that case:

> It does not appear [under the Act], however, that the Acting Attorney General has the power to define the *prosecutorial jurisdiction* of an independent counsel, See 28 U.S.C. § 593(c). That power is vested only in this court, which has not formalized a definition of Independent Counsel McKay's prosecutorial jurisdiction in the Meese matter.

Application to Define Jurisdiction of Independent Counsel, *In re Nofziger/Meese,* Div. No. 87–1 (Aug. 6, 1987)....

*Meese,* 907 F.2d at 1200–01 (Emphasis original). This comports with the plain meaning of the statute, as examined and noted earlier in this opinion.

## IV. Conclusion.

The Independent Counsel, in his brief at page 29, asks: What is the harm if the Independent Counsel handles this investigation rather than the Attorney General? What difference does it make? It makes a

great deal of difference if the statute and the Supreme Court plainly state that only matters related to the Independent Counsel's original prosecutorial jurisdiction are to be handled by him. In the first place, criminal statutes and criminal procedures must be faithfully followed. To gloss over and shortcut the requirements of criminal statutes is the first step toward tyranny. If the statute says that the Independent Counsel should not make the decision to prosecute in an unrelated matter, but that this decision shall be made by the Attorney General, it makes a great deal of difference.

Few would disagree with Justice Scalia's statement in his dissent in *Morrison v. Olson, supra,* at 708, 108 S.Ct. at 2628 that: "... the balancing of various legal, practical and political considerations, none of which is absolute, is the very essence of prosecutorial discretion." The vast power and immense discretion the Independent Counsel seeks to wield in this case must find its genesis in the statute or in the courts' interpretation of the statute. I do not find it here.

The words of Justice Robert Jackson, in an address, *The Federal Prosecutor,* delivered at the Second Annual Conference of United States Attorneys April 1, 1940, were quoted by Justice Scalia in his dissent in *Morrison v. Olson, supra,* at 728, 108 S.Ct. at 2638. These words bear repeating here:

> What every prosecutor is practically required to do is to select the cases for prosecution and to select those in which the offense is the most flagrant, the public harm the greatest, and the proof the most certain. If the prosecutor is obliged to choose his case, it follows that he can choose his defendants. Therein is the most dangerous power of the prosecutor; that he will pick people that he thinks he should get, rather than cases that need to be prosecuted. With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone. In such a case, it is not a question of discovering the commission of a crime and then looking for the man who has committed it, it is a question of picking the man and then searching the law books, or putting investigators to work, to pin some offense on him. It is in this realm—in which the prosecutor picks some person whom he dislikes or desires to embarrass, or selects some group of unpopular persons and then looks for an offense, that the greatest danger of abuse of prosecuting power lies. It is here that law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself ...

It is certainly true that the United States Attorney or the Attorney General may find in their discretion that these defendants have violated the law and that they should be indicted and prosecuted. However, such discretion is theirs to exercise. It is not granted to an independent counsel under the statutes or decisions of our courts in this particular matter.

While the Supreme Court has upheld the constitutionality of the Ethics in Government Act, *Morrison v. Olson, supra,* cannot be read without drawing the conclusion that the Supreme Court meant that the authority and jurisdiction of an independent counsel should be confined to a narrow channel and not be expanded beyond the explicit wording of the statute. A thoughtful commentator has pointed out that:

> ... congressional committee requests for independent counsel investigations of *particular named* executive officials bear a frightening resemblance to Bills of Attainder. Bills of Attainder, however, traditionally required at least the approval of the entire legislature (like all other "legislation"). In contrast, independent counsel requests may be triggered by just a few members of Congress serving on a particular committee with an axe to grind. See 28 U.S.C. § 592(g)(1) (1988). Once a partisan request for the appointment of an independent counsel has been made, the Attorney General and the Special Division which oversees such investigations may find it very difficult to avoid appointing a counsel just to clear up the "impressions" that were created by the request having

been made. And once a counsel is appointed, the pressures to prosecute or to force a plea bargain (as happened with Michael Deaver and Webster Hubbell) are not insignificant. Accordingly, the EIGA independent counsel system is not as far removed from the traditionally hated and unconstitutional Bill of Attainder as many may think.

S.G. Calabresi, "Some Normative Arguments for the Unitary Executive," 48 Ark.L.Rev., p. 93, n. 164. (This statement is attributed to Walter Dellinger, III.)

Since its original enactment, the Independent Counsel Act has been used extensively, some would say, including Justice Scalia, that it has been abused. The *Arkansas Law Review* article, cited *supra*, at n. 163, points out its wide use:

> During the two years of the Carter Administration that the Ethics in Government Act was in effect, two Independent Counsels were appointed: Arthur Christy investigated White House Chief of Staff Hamilton Jordan and Gerald Gallinghouse investigated White House staffer Timothy Kraft. During the eight years of the Reagan Administration, seven Independent Counsels were appointed: Leon Silverman investigated Secretary of Labor Raymond Donovan; Jacob Stein investigated White House Counselor Edwin Meese III; Alexia Morrison investigated Assistant Attorney General Theodore Olson; Whitney North Seymour investigated White House aide Michael Deaver; Laurence Walsh investigated a number of officials for their involvement in Iran–Contra; James McKay investigated Lynn Nofziger, Attorney General Edwin Meese III, and others; and former Judge Arlin Adams investigated HUD Secretary Samuel Pierce, Jr. During the three years and 11 months of the Bush Administration that the statute was in effect, one additional Independent Counsel was appointed: Joseph DeGenova investigated Secretary of State James Baker and other State Department aides involved in the illegal search of Bill Clinton's passport file. Independent Counsels Laurence Walsh and Arlin Adams continued their investigations throughout this period.

During the first two months of the Clinton Administration that the statute has been back in effect, Attorney General Janet Reno has sought the appointment of two Independent Counsel: the first request concerned the Whitewater Investigation and led to the appointment of Kenneth Starr to replace Robert Fiske; the second request concerned Agriculture Secretary Mike Espy and led to the appointment of Donald Smaltz.

During the Clinton Administration, citizens of the State of Arkansas have undergone wide-ranging investigations by two independent counsel. Some of these, on the surface at least, would seem to have dubious connection with the original or supplemental grant of prosecutorial jurisdiction.

The history of independent counsel investigations is not reassuring to this Court. Perhaps the most questionable example was the indictment of Defense Secretary Weinberger in the Iran–Contra investigation by an independent counsel. Weinberger was one of two cabinet officials who opposed the Reagan Administration's involvement in the Iran–Contra affair. Yet, he was the only cabinet official who suffered an indictment.

While Justice Scalia's dissent did not carry the day in *Morrison v. Olson, supra,* he made some highly pertinent observations about the officials having supervision over the independent counsel. He or she is responsible to no elected officials, but only to a panel of three appointed members of the Federal Judiciary.

As Justice Scalia points out the highly successful Teapot Dome and Watergate investigations were carried out by independent counsel named by the Attorney General. Elected members of the Executive Department were ultimately responsible to the electorate for the manner in which these investigations were carried out. Not so with the independent counsel under the current statute. "It seems to me not conducive to fairness. But even if it were entirely evident that unfairness was in fact the result—the judges hostile to the administration, the independent counsel an old foe of the President, the staff refugees from the recently defeated administration—*there would be no one ac-*

*countable to the public to whom the blame could be assigned."* (*Morrison v. Olson, supra,* at 731, 108 S.Ct. at 2639, Scalia, J., dissenting) (Emphasis original.)

I am not suggesting that there has been unfairness in the case at bar on the part of the Independent Counsel or the Special Division. I do believe, as does Justice Scalia, that the potential is present in the Independent Counsel Act. I have no idea what the proof will be on this indictment. I am firmly convinced, along with the majority in *Morrison v. Olson, supra,* that the prosecutorial jurisdiction of the Independent Counsel must be strictly contained within its statutory bounds.

There are, undoubtedly, situations that may justifiably call for the appointment of independent counsel. At any rate, Congress has made such a determination. The wisdom of this statute is not for me to decide. This does not mean that the judiciary is not the proper department of our government to delineate the bounds of the statute's prosecutorial jurisdiction. I am at least empowered initially to make this determination. .If we are to remain a government of laws and not of men, it must ever be so.[2]

It is evident from this opinion that I am convinced that the Independent Counsel had no jurisdiction to present the matters contained in this indictment to the grand jury. In my view, this jurisdiction was vested in the Attorney General or the United States Attorney for the Eastern District of Arkansas. It was within their sole jurisdiction to exercise their discretion as to whether the indictment should be obtained in this matter.

It, therefore, follows that this indictment must be quashed as to all defendants. Parenthetically, I add that I deal with an important issue in this case. Fortunately, all my decisions are subject to higher review.

I will do everything in my power to have an expeditious appeal of this decision to the Court of Appeals and to the Supreme Court. In this endeavor, I can pledge the support of my clerk and court reporter. The defendants have stated that they seek a quick disposition of this matter. I am sure the government joins in these sentiments. I can assure all concerned that I am also anxious for a quick resolution.

■ It would be foolish to put these parties to an extensive and expensive trial when there exists a serious, and in my view, fatal defect of jurisdiction. Lack of jurisdiction can be successfully raised at any point in litigation. How patently unfair would it be after the stress and expense of a long trial to have a determination made at a later stage of the proceedings that there was no jurisdiction in the first place?

An order will be entered in conformity with this opinion quashing this indictment in its entirety as to the three defendants. All other motions except those relating to jurisdiction are rendered moot.

EXHIBIT A

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Division for the Purpose of Appointing Independent Counsels

Ethics in Government Act of 1978, As Amended

Division No. 94–1

In re: Madison Guaranty

Savings & Loan Association

Order Appointing Independent Counsel

Before: SENTELLE, Presiding, and BUTZNER and SNEED, Senior Circuit Judges.

Upon consideration of the application of the Attorney General pursuant to 28 U.S.C. § 592(c)(1)(A) for the appointment of an independent counsel with authority to exercise all the power, authority and obligations set forth in 28 U.S.C. § 594, to investigate whether any individuals or entities have committed a violation of federal criminal law,

---

**2.** I had never realized until reading Justice Scalia's opinion in *Morrison v. Olson, supra,* that the origin of this principle is to be found in the Massachusetts Constitution of 1780. [487 U.S. at 697, 108 S.Ct. at 2622.]

other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.; it is

ORDERED by the Court in accordance with the authority vested in it by 28 U.S.C. § 593(b) that Kenneth W. Starr Esquire, of the District of Columbia bar, with offices at Kirkland and Ellis, 655–15th Street, NW, Washington, DC, 20005, be and he is hereby appointed Independent Counsel with full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether any individuals or entities have committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings & Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.

The Independent Counsel shall have jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation.

The Independent Counsel shall have jurisdiction and authority to investigate any violation of 28 U.S.C. § 1826, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of federal criminal law, in connection with any investigation of the matters described above.

The Independent Counsel shall have jurisdiction and authority to seek indictments and to prosecute any persons or entities involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters, including persons or entities who have engaged in an unlawful conspiracy or who have aided or abetted any federal offense.

The Independent Counsel shall have all the powers and authority provided by the Independent Counsel Reauthorization Act of 1994. It is

FURTHER ORDERED by the Court that the Independent Counsel, as authorized by 28 U.S.C. § 594, shall have prosecutorial jurisdiction to fully investigate and prosecute the subject matter with respect to which the Attorney General requested the appointment of independent counsel, as hereinbefore set forth, and all matters and individuals whose acts may be related to that subject matter, inclusive of authority to investigate and prosecute federal crimes (other than those classified as Class B or C misdemeanors or infractions) that may arise out of the above described matter, including perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses. The Court, having reviewed the motion of the Attorney General that Robert B. Fiske, Jr., be appointed as Independent Counsel, has determined that this would not be consistent with the purposes of the Act. This reflects no conclusion on the part of the Court that Fiske lacks either the actual independence or any other attribute necessary to the conclusion of the investigation. Rather, the Court reaches this conclusion because the Act contemplates an apparent as well as an actual independence on the part of the Counsel. As the Senate Report accompanying the 1982 enactments reflected, "[t]he intent of the special prosecutor provisions is not to impugn the integrity of the Attorney General or the Department of Justice. Throughout our system of justice, safeguards exist against actual or *perceived* conflicts of interest without reflecting adversely on the parties who are subject to conflicts." S.Rep. No. 496, 97th Cong., 2d Sess. at 6 (1982) (emphasis added). Just so here. It is not our intent to impugn the integrity of the Attorney General's appointee, but rather to reflect the intent of the Act that the actor be protected against perceptions of conflict. As Fiske was appointed by

the incumbent administration, the Court therefore deems it in the best interest of the appearance of independence contemplated by the Act that a person not affiliated with the incumbent administration be appointed.

It further appearing to the Court in light of the Attorney General's motion heretofore made for the authorization of the disclosure of her application for this appointment pursuant to 28 U.S.C. § 592(e) and of the ongoing public proceedings and interest in this matter, that it is in the best interests of justice for the identity and prosecutorial jurisdiction of the Independent Counsel to be disclosed,

IT IS SO ORDERED.

> Per Curiam
> For the Court:
>
> /s/ Ron Garvin
> Ron Garvin, Clerk

## EXHIBIT B

## STATE OF ARKANSAS

## COUNTY OF PULASKI

*AFFIDAVIT OF JIM GUY TUCKER*

Jim Guy Tucker, on oath, states as follows:

1. I am not and have never been a part of the Executive Branch of the United States Government.

2. I have examined the indictment in this case. To my certain knowledge no member of the Executive Branch of the United States Government participated in any transaction to which the indictment refers.

3. To my certain knowledge neither the President of the United States nor his First Lady have had any connection whatever with the business matter called, in the indictment, "LMS", Cablevision Management, Inc. ("CMI") or any other entity to which the indictment refers.

Further Affiant sayeth not.

> /s/ Jim Guy Tucker
> Jim Guy Tucker

SUBSCRIBED AND SWORN to me before this the 7th day of July, 1995.

> /s/ Linda J. West
> Notary Public

## EXHIBIT C

U.S. Department of Justice

Criminal Division

Office of the Assistant Attorney General

Washington, D.C. 20530

September 2, 1994

Mr. Kenneth W. Starr
Two Financial Centre
10825 Financial Centre Parkway
Suite 134
Little Rock, Arkansas 72211

Dear Mr. Starr:

The Attorney General has received your letter of August 31, 1994 requesting that the Department of Justice refer to the Office of Independent Counsel/Madison Guaranty Bank related matters pursuant to 28 U.S.C. § 594(e). After reviewing your description of the information developed in the course of the investigation conducted by the Office of Independent Counsel, she has concluded that these matters are related to your investigation and that referral to your Office would be appropriate. We therefore refer investigative and prosecutorial jurisdiction over the following matters to your Office:

(1) Whether any person committed any federal crime relating to the bankruptcy action entitled *In Re: Landowners Management System, Inc., Tax Identification No 75-2001914, Debtor*, United States Bankruptcy Court, Northern District of Texas, Case No. 787-70392 (Chapter 11); and

REDACT REDACT REDACT

Your jurisdiction affords you necessary flexibility in structuring your investigation. To the extent you determine that aspects of these matters which might fall technically within the broad scope of your jurisdiction are not sufficiently related to your mandate to warrant handling by your office, you may refer those aspects back to the Department of Justice for handling pursuant to 28 U.S.C. § 597(a).

Should you wish at any time to consult with the Department of Justice concerning Departmental policies with respect to these criminal tax or other matters, 28 U.S.C. § 594(f)(1), I invite you to contact Lee J. Radek, Chief, or Jo Ann Farrington, Deputy Chief, Public Integrity Section, Criminal Division, who will put you in touch with the appropriate Departmental officials. They can be reached at (202) 514-1412.

To complete our files, I would appreciate your providing Mr. Radek with a copy of your notification to the Special Division of the Court of this referral. 28 U.S.C. § 594(e). Please let me know if I can be of any further assistance to you in the course of your investigation.

Sincerely,

/s/ John C. Keeney

John C. Keeney
Acting Assistant Attorney General
Criminal Division

## EXHIBIT D

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Division of the Purpose of
Appointing Independent Counsels

Ethics in Government Act
of 1978, As Amended

Division No. 94-1

In re: Madison Guaranty
Savings & Loan Association

## UNDER SEAL

### ORDER

Upon consideration of the Application for Order of Referral and Order of Jurisdiction of Independent Counsel filed under seal, it is

HEREBY ORDERED that investigative and prosecutorial jurisdiction over the following matters be referred to the Independent Counsel Kenneth W. Starr and to the Office of the Independent Counsel (hereinafter collectively "the Office") as related matters pursuant to 28 U.S.C. § 594(e):

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

Whether any person committed any federal crime relating to the bankruptcy action entitled *In re: Landowners Management Systems, Inc., Tax Identification No. 75-2001914, Debtor,* United States Bankruptcy Court, Northern District of Texas, Case No. 787-70392 (Chapter 11);

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

IT IS FURTHER ORDERED, that, as a result of the referral of the above-described matters and the jurisdictional grant made by this Court on August 5, 1994, Kenneth W. Starr has full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether any individuals or entities have committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings & Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.

The Independent Counsel further has jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation, including, but not limited to:

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

Whether any person committed any federal crime relating to the bankruptcy action entitled *In re: Landowners Management Systems, Inc., Tax Identification No. 75–2001914, Debtor,* United States Bankruptcy Court, Northern District of Texas, Case No. 787–70392 (Chapter 11);

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

REDACT REDACT REDACT

The Independent Counsel has jurisdiction and authority to investigate any violation of 28 U.S.C. § 1826, or any obstruction of the due administration of justice, or any material false testimony or statement in violation of federal criminal law, in connection with any investigation of the matters described above.

The Independent Counsel has jurisdiction and authority to seek indictment and to prosecute any persons or entities involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters, including persons or entities who have engaged in an unlawful conspiracy or who have aided or abetted any federal offense.

The Independent Counsel has all the powers and authority provided by the Independent Counsel Reauthorization Act of 1994.

The Independent Counsel, as authorized by 28 U.S.C. § 594, has prosecutorial jurisdiction to fully investigate and prosecute the subject matter with respect to which the Attorney General requested the appointment of independent counsel, and all matters and individuals whose acts may be related to that subject matter, inclusive of authority to investigate and prosecute federal crimes (other than those classified as Class B or C misdemeanors or infractions) that may arise out of the above described matter, including perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses.

IT IS FURTHER ORDERED, that the Independent Counsel may disclose, to those persons who are the subject of the matters referred to the Independent Counsel and their counsel, those portions of this Order relating to such subjects provided that:

(1) A person to whom disclosure is permitted to be made shall receive a copy of this Order from which all matters will be redacted from pages 1 through 4 except those pertaining to the person to whom disclosure is made; and

(2) Each recipient of the redacted Order shall sign a Statement of Acknowledgement and Consent in the form attached hereto.

Per Curiam
For the Court:
/s/ Ron Garvin
Ron Garvin, Clerk

IT IS SO ORDERED.

Dated: December 19, 1994