# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Decided August 29, 2008

No. 06-1244

FABI CONSTRUCTION COMPANY, INC. AND
PRO MANAGEMENT GROUP,
PETITIONERS

v.

SECRETARY OF LABOR,
RESPONDENT

On Petition for Review of an Order of the
Occupational Safety and Health Administration

On Application for Attorneys' Fees

Before SENTELLE, *Chief Judge*, and GINSBURG and BROWN,
*Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Fabi Construction, Inc. and Pro
Management Group (hereinafter "Fabi") petition this court for
an award of attorneys' fees and costs in the amount of
$569,031.38 incurred in connection with the defense of citations
issued by the Secretary of Labor (hereinafter "Secretary"). *See
Fabi Constr. Co. v. Sec'y of Labor*, 508 F.3d 1077 (D.C. Cir.

2007). Fabi has submitted its attorneys' billing records along with its petition, and the Secretary has filed her opposition. After examination of the billing records and consideration of the Secretary's objections, we find that Fabi is entitled to an award of attorneys' fees and costs, but not for the full amount sought. We conclude, for the reasons stated below, that Fabi is entitled to an award in the amount of $165,304.87.

## I. BACKGROUND

We set forth in detail the background of this case in *Fabi*, 508 F.3d at 1079-80. For our purposes here we note that Fabi was involved in the construction of a parking garage, providing labor, materials, and equipment for cement work. While Fabi was pouring concrete on the eighth level, levels four through eight collapsed, killing four workers and injuring numerous others. The Occupational Safety & Health Administration, an agency of the U.S. Department of Labor, investigated the accident and cited Fabi for six violations of the Occupational Safety & Health Act. Two of the violations were later withdrawn by the Secretary. The remaining violations were litigated before an Administrative Law Judge ("ALJ"), and his decision was appealed to this court. In short, several of the litigated violations were affirmed while those remaining were vacated.

## II. DISCUSSION

Fabi now seeks an award of attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Under sections 2412(a)(1), (b), and (d)(1)(A), a court may award "costs" and "reasonable fees and expenses" of attorneys to the "prevailing party" in any civil action brought by the United States or any United States agency, including "proceedings for judicial review of agency action." Fees and expenses are to be

awarded to a prevailing party "unless the court finds that the position of the [Government] was substantially justified." 28 U.S.C. § 2412(d)(1)(A). And pursuant to section 2412(d)(2)(B)(ii), a party is eligible for an award if its net worth "did not exceed $7,000,000 at the time the civil action was filed . . . ."

As an initial matter we find that Fabi has submitted sufficient documentation showing that its net worth does not exceed $7 million. *See Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 166-69 (4th Cir. 2004). Using EAJA rates, Fabi states that its total attorneys' fees expended in litigating the merits of the case amounted to $645,881.15, and its total costs and expenses amounted to $88,740.77. After making certain adjustments Fabi requests an award in the amount of $530,543.95,[1] plus $37,590.60 in attorneys' fees and $896.83 in costs and expenses incurred in pursuing its application for attorneys' fees, for a total award of $569,031.38. In our discussion below, we consider Fabi's fee petition and make an award in light of the "reasonable" and "substantially justified" standards set forth in the EAJA.

## Attorneys' fees

### Reasonableness

*Lumping tasks together.* In *In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989), we noted that "when an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task. With such inadequate descriptions the court cannot

---

[1]Fabi asserts that this amount excludes any fees expended for press coverage, transportation, mileage, Federal Express and messenger services, and hotels.

'determine with a high degree of certainty,' as it must, that the billings are reasonable." For example, on May 4, 2004, an attorney entry for 3.8 hours indicated that the following five tasks were performed: "Review articles in preparation for conference call regarding public relations issues; participate in teleconference with R. Cossack, S. Yohay, K. Dunne, B. Ficken, S. Perillo and A. Zappone, regarding same; meet with S. Yohay regarding demolition issues; teleconference with RJR representatives regarding same; draft letter to D. Sherman regarding same." Also, on November 1, 2004, a lead attorney submitted an entry for 2.7 hours for the following nine tasks: "Telephone conference with D. Sherman, S. Yohay regarding upcoming settlement proposal; telephone conference with S. Demitrio, S. Yohay regarding deposition schedule and discovery orders issued by Judge Rooney; followup telephone conference with S. Yohay regarding depositions; review correspondence from Keating counsel F. Jacoby regarding same; telephone conference with S. Yohay regarding same; contact N. Devine regarding preparation of settlement proposal for submission to D. Sherman; review and revise settlement proposal; review press coverage of one-year anniversary of garage collapse." Fabi has indicated that it has made deductions for work done on public relations and press coverage, but because those tasks have been lumped together with other tasks we are unable to ascertain with certainty whether the correct deductions have been made.

*Inadequate detail*. In *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (per curiam), the court made deductions to the requested attorneys' fees award because "[t]he time records maintained by the attorneys, paralegals and law clerks are replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed." The billing entries here are replete with such entries. There are, for example, numerous entries concerning telephone calls, telephone conferences, email

exchanges, and meetings that give no further information of what these communications concerned. *See, e.g.*, entries on: Apr. 6, 2004 ("Telephone conference with L. Daley regarding various matters"); May 5, 2004 ("telephone conference with S. Perillo; telephone conferences with B. Ficken"); July 20, 2004 ("reviewing email from O. Guedelhoefer re numerous issues"); Aug. 11, 2004 ("telephone conference with D. Morikawa (Site-Blauvelt counsel"); Sept. 13, 2004 ("Meeting in Philadelphia with Pepper Hamilton team, and with A. Zappone and S. Perillo"); Mar. 7, 2005 ("Meet at Pepper Hamilton"); Mar. 17, 2005 ("phone conferences with C. Guedelhoefer"); Mar. 29, 2005 ("phone conferences with S. Demetrio, D. Tigue, J.F. Lagroterria, C. Reynolds"); Apr. 6, 2005 ("meet with RR&J at Pepper"); Oct. 17, 2005 ("confer with Corvo and Kreig"); Nov. 15, 2005 ("phone conference with Horty & Horty"); Oct. 9, 2007 ("draft e-mails to S. Gordon").

*Relevancy*. We note that there are various entries that do not appear to be relevant to defending the Secretary's allegations and therefore may not be included in an award. *See, e.g.*, entries on July 12, 2004 ("review motion concerning extrajudicial statements filed in state litigation"); Sept. 24, 2004 ("call from K. Levin re recent status conference in state court matter"); Oct. 27, 2004 ("calls from S. Perillo and A. Zappone re reporter's interest in OSHA Report"); Nov. 1, 2004 ("call from S. Perillo re press coverage"); May 16, 2005 ("telephone conference with R. Deluca re: state-court litigation"); July 5, 2005 ("phone conference with R. Deluca regarding civil lawsuit, status, strategy").

Taking all of the above-mentioned billing defects into consideration – i.e., tasks lumped together, inadequate detail, and irrelevancy – we will reduce by 25 percent the amount of $645,881.15, which, as noted above, Fabi states is the total for attorneys' fees expended in litigating the merits of this case. *See*

*Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (award reduced by fifty percent for, among other deficiencies, multiple tasks lumped together, inadequate detail, and irrelevancy). This reduction yields an amount of $484,410.86.

### Position substantially justified

Under the EAJA, attorneys' fees may be awarded to the "prevailing party" in an action brought by a United States agency. 28 U.S.C. § 2412(a)(1). Fees and expenses are to be awarded to a prevailing party "unless . . . the position of the [Government] was substantially justified." 28 U.S.C. § 2412(d)(1)(A). It is not sufficient to satisfy the statute that the government's position has not prevailed. The statutory structure assumes that "the Government . . . could take a position that is substantially justified, yet lose." *Pierce v. Underwood*, 487 U.S. 552, 569 (1988). Here, on Citation 1, Item 1, Instance (a); Citation 1, Item 1, Instance (b); and Citation 1, Item 5, the Secretary's position was affirmed, and consequently Fabi was not the prevailing party on those issues, and is not eligible for attorneys' fees in defense of them. Citation 1, Item 3, and Citation 1, Item 4, were withdrawn by the Secretary before trial. The Secretary concedes that she was not substantially justified in her position on those items, and therefore Fabi is eligible for attorneys' fees in defense of them. Remaining for resolution as to whether the Secretary was justified in her position are Citation 1, Item 1, Instance (c); Citation 1, Item 2; and Citation 2, Item 1.

*Citation 1, Item 1, Instance (c).* In Citation 1, Item 1, Instance (c), the Secretary charged Fabi with a violation for not placing bottom steel, a type of reinforcing steel, in accordance with industry standards and with the structural and/or shop drawings. In the proceedings below the Administrative Law

Judge concluded that the Secretary had failed to establish by a preponderance of the evidence that a violation had occurred. The ALJ vacated Instance (c) on the ground that "evidence regarding industry recognition of the failure to include bottom steel was equivocal . . . [T]here was a dispute among the experts regarding whether the bottom bars depicted in the structural drawings would have added to the stability of the structure." The Secretary did not appeal the ALJ's decision on this issue. Because the Secretary's position, while unsuccessful, was supported by expert testimony, we conclude that it was substantially justified, and therefore Fabi is not eligible for attorneys' fees on this issue.

*Citation 1, Item 2*.  In Citation 1, Item 2, the Secretary charged Fabi with a violation for not having shoring plans available at the worksite for multiple levels (P3 to P8) of the structure.  In the proceedings below, the ALJ vacated Citation 1, Item 2, holding that Fabi had shoring plans for level P2 onsite, and level P2 was sufficiently similar to levels P3 through P8 so that Fabi was not required to have shoring plans for the other levels onsite.  The Secretary did not appeal the ALJ's decision on this issue.  Because it appears that the record, as recounted by the ALJ, was ambiguous and the issue was not clear cut, we conclude that the Secretary's position was substantially justified, and therefore Fabi is not eligible for attorneys' fees on this issue.

*Citation 2, Item 1*.  In Citation 2, Item 1, the Secretary charged Fabi with a violation for making "formwork" (specifically the slabs below level P8) incapable of supporting the loads imposed by level P8.  Fabi argued to the ALJ that the term "formwork" in the regulation at issue includes only temporary forms supporting newly poured concrete during construction.  The ALJ concluded that the regulation governs permanent types of formwork.  On appeal we vacated this item,

agreeing with Fabi "that the plain language of 'formwork' in the context of the regulation cannot include permanent parts of structures like slabs." *Fabi I*, 508 F.3d at 1086. We therefore held that the permanent structures that were constructed improperly were not "formwork" under the regulation. We concluded that "the Secretary's . . . interpretation of formwork . . . is beyond the bounds of reasonableness," *id.*, and that "the regulations at issue d[id] not give [Fabi] fair notice of the Secretary's interpretation." *Id.* at 1088. Furthermore, we vacated this citation under a highly deferential standard of review and concluded that OSHA had violated Fabi's right to due process. *Id.* We therefore conclude that the Secretary's position was not substantially justified, and Fabi is therefore eligible for a fee award on this item.

In sum, the Secretary took eight positions: three in Citation 1, Item 1, and one each in Citation 1, Items 2 through 5, and Citation 2, Item 1. The Secretary was affirmed on three of those eight positions (Citation 1, Item 1, Instance (a); Citation 1, Item 1, Instance (b); and Citation 1, Item 5), and as noted above we find her position substantially justified on another two (Citation 1, Item 1, Instance (c), and Citation 1, Item 2). Fabi is therefore not eligible for an attorneys' fees award on these five issues. Of the remaining three positions, the Secretary has conceded that her position was not substantially justified on two (Citation 1, Item 3, and Citation 1, Item 4), and as noted above we have determined that her position on the third (Citation 2, Item 1) was not substantially justified. We will therefore award attorneys' fees to Fabi for defending against those citations.

Our final task in calculating an award of attorneys' fees is to determine the amount of the award. Ideally, we would review the billing entries for work done on each citation and calculate the award accordingly. But the billing entries submitted are of very little help in that they rarely mention how much time has

been spent on each issue. We will instead assume that an equal amount of time was spent in connection with each issue. *See American Wrecking Corp. v. Secretary of Labor*, 364 F.3d 321, 329 (D.C. Cir. 2004). As noted above, Fabi is eligible for fees on three of the eight positions taken by the Secretary, and we will therefore multiply the last amount noted above, $484,410.86, by 3/8, resulting in an amount of $181,654.07. As the Secretary points out, however, allocating fees in this manner, i.e., dividing total fees expended by number of eligible items, gives Fabi the same compensation for the withdrawn items as it does for the item that was tried before the ALJ, raised before the full Commission, and then appealed to this court. In order to account for this discrepancy, we will reduce the award for the withdrawn items by 50 percent. To calculate this amount, we will first divide $181,654.07 by three, resulting in an amount of $60,551.36 for each of the three eligible items. We will then reduce that amount by 50 percent, resulting in an award of $30,275.68 for each of the two withdrawn items. The total award for attorneys' fees is therefore $30,275.68 (for Citation 1, Item 3) + $30,275.68 (for Citation 1, Item 4) + $60,551.36 (for Citation 2, Item 1), which sums to $121,102.72.

## Costs and expenses

Fabi states that it has expended a total of $88,740.77 for costs and expenses in litigating the merits of the case. We find, however, the list of costs and expenses inadequately detailed, filled with generic references such as "transcripts," "publication," and "document production." To reflect these defects in the costs and expenses billings, we will reduce, as we did above for attorneys' fees, the requested amount by 25 percent. *See In re Meese*, 907 F.2d at 1204 (reducing petitioner's award for costs because of inadequate documentation); *In re Donovan*, 877 F.2d 982, 994-95 (D.C. Cir. 1989) (fee applicant must provide adequate documentation of

reasonableness of fees and costs incurred).  This reduction (.75 x $88,740.77) yields an amount of $66,555.58.  We also must make a further deduction to reflect Fabi's award eligibility on only three of the eight positions taken by the Secretary.  As we did calculating the attorneys' fees above, we will multiply the last amount stated by 3/8, resulting in a total award for costs and expenses of $24,958.34.

**Fee application fees**

Fabi further seeks $37,590.60 in attorneys' fees and $896.83 in costs and expenses it claims were expended on preparing and defending its fee application.  This amount for attorneys' fees was calculated using 236.8 hours of attorneys' fees billed by Fabi for the fee application, which turns out to be nearly six 40-hour weeks of attorney time.  In her response the Secretary contends that this length of time appears excessive for work done on the application, and we agree. *See, e.g., American Wrecking Corporation v. Sec'y of Labor*, 364 F.3d 321, 331 (D.C. Cir. 2004) (three 40-hour weeks spent compiling attorneys' fees application found to be "an excessive amount").  We will therefore reduce the requested amount for attorneys' fees by half, *see id.*, resulting in an amount of $18,795.30.  For the same reason we will reduce by half the request for costs and expenses, resulting in an amount of $448.42.

### III.  CONCLUSION

For the reasons set forth above, it is ordered that Fabi be awarded $121,102.72 for attorneys' fees and $24,958.34 for costs and expenses in litigating the merits of this case, plus $18,795.39 in attorneys' fees and $448.42 in costs and expenses incurred pursuing its application for attorneys' fees, for a total of $165,304.87.